[PROMISSORY NOTE. PAYMENT.]

The PRESIDENT, DIRECTORS, and COMPANY OF THE BANK OF THE UNITED STATES v. The PRESIDENT, DIRECTORS, and COMPANY OF THE BANK OF THE STATE OF GEORGIA.

In general, a payment received in forged paper, or in any base coin, is not good; and if there be no negligence in the party, he may recover back the consideration paid for them, or sue upon his original demand.

But this principle does not apply to a payment made *bona fide* to a Bank, in its own notes, which are received as cash, and afterwards discovered to be forged.

In case of such a payment upon general account, an action may be maintained by the party paying the notes, if there is a balance due him from the Bank upon their general account, either upon an *insimul computassent*, or as for money had and received.

ERROR to the Circuit Court of Georgia. This was an action of assumpsit, brought by the plaintiffs in error, the President, &c. of the Bank of the United States, against the defendants in error, the President, &c. of the Bank of the State of Georgia, in which the plaintiffs declared for the balance of an account stated, and for money had and received to their use. At the trial, the plaintiffs offered evidence, to prove, that mutual dealings existed between the parties, in the course of which, each being in the receipt of the bills of the other, they mutually paid in or deposited the bills of the other party, at intervals, as

each found the bills of the other party had accumulated to any considerable amount in their respective vaults : and upon each of such payments or deposits, the amount thereof was entered as so much "*cash*" in the customer's book of the party depositing, by the proper officer of the Bank receiving the same ; from which said book of the plaintiffs, which was given in evidence, it appeared that the sum of 6,900 dollars was the balance due from the defendants to the plaintiffs, at the time of instituting this action. The plaintiffs also offered evidence, that the transactions between the parties were almost exclusively in the deposits of their respective bills as aforesaid. And the defendants, to maintain their said defence, offered evidence to prove, that in one of the said deposits so made by the plaintiffs, in the bank of the defendants, and so entered in the said book of the plaintiffs by the proper officer of the defendants, at the time the said deposit was made, to wit, on the 25th of February, in the year 1819, and which is one of the items comprised in the account upon which the balance was claimed by the plaintiffs, there were paid in 38 bills of the defendants' own issues or notes, of 5 dollars each, which had been fraudulently altered by some person or persons unknown, from the denomination of 5 to that of 50 ; and 40 bills of the defendants' own issues or notes of 10 dollars each, which had in like manner been fraudulently altered by some person or persons unknown, to that of *hundreds*, making together the sum of 5,900 dollars, demanded by the plain-

tiffs in this action; which said bills or notes had been subsequently tendered by the defendants to the plaintiffs, before the institution of this action, and by the plaintiffs refused. The plaintiffs then offered evidence to prove that no notice or intimation of the said fraudulent alteration aforesaid was given by the defendants to the plaintiffs, until the 16th of March, 1819, and that the tender to return the said altered notes to the plaintiffs by the defendants, was not made until the 17th of March, 1819, nineteen days after the receipt of the said notes by the defendants from the plaintiffs, and the entry of the same in the customer's book of the plaintiffs. The defendants further offered evidence to prove, that the said altered bills, so deposited by the plaintiffs and received by the defendants, had been received by the plaintiffs from the Planters' and Merchants' Bank of Huntsville, concerning which notes a correspondence had taken place between the plaintiffs and the said Planters' and Merchants' Bank of Huntsville, subsequently to the detection of the said fraudulent alteration, in the following words and figures, to wit : -

OFFICE BANK U. STATES,

*Savannah, 17th of March,* 1819.

EDWARD RAWLINS, Esq.

*Cashier P. and Merchants' Bank of Huntsville.*

SIR—Upon a more minute investigation of the bills received last month from Mr. Hobson, of your bank, it turns out that 40 of the 100 dollar notes of the State Bank of this place, were al-

1825.

U. S. Bank
v.
Bank of
Georgia

tered from 10 dollars, and 58 of the 50 dollar notes of the same bank were altered from 5 dollar notes, producing against us a difference in the 100 dollar notes of 3,600 dollars, and in the 50, 2,610 dollars, making the whole difference 6,210 dollars. By the person which we shall in a few days send to your place, as heretofore intimated, we will forward these altered bills for the purpose of getting you to exchange them for other money.

ELEAZAR EARLY, *Cashier.*

P. S. Herein I enclose, for your future security, the official notice of the banks of Georgia, pointing out the difference between the genuine and altered bills  E. E. *Cashier.*

OFFICE BANK U. STATES,
*Savannah, 25th March,* 1818.
LE ROY POPE, Esq.
*President Bank Huntsville.*

SIR—Will you suffer me to introduce to your acquaintance and kindness, the bearer, Mr. Heinemann, our teller, whose objects have already been imparted to you in my letters of 23d February, and 13th inst. (copies in Mr. H.'s possession,) and which, we doubt not, will receive every facility from your institution. Mr. Heinemann is also instructed to lay before you formal notice of a claim which we shall make on your bank for the spurious notes received from Mr. Hobson, in the event of our being cast in the suit about to be brought between the Bank of Georgia and our-

selves in the case. It has been deemed a better course than that proposed in our Cashier's letter to Mr. Rawlins, your Cashier, of the 17th inst. and will, no doubt, be more agreeable to you,

Your obedient servant,

R. RICHARDSON, *President.*


PLANTERS AND MERCHANTS' BANK
of HUNTSVILLE, 4*th May*, 1819.

SIR—Your favour under date of the 25th, has been handed me by Mr. Heinemann, wherein you give me notice, that your bank holds this institution bound to make good the amount of the spurious notes which you say was received from Mr. Hobson, in the event of your being cast in a suit about to be brought between the Bank of Georgia and yourselves. I am directed by the Board of Directors to state to you, that they highly approve of the course your bank have adopted in regard to these spurious notes, and we shall cheerfully acquiesce with the decision of the Court, let that be what it may.

I am, respectfully,
Your obedient servant,
LE ROY POPE, *President.*
R. RICHARDSON, Esq.
*President Office Bank United States,
Savannah.*


And the plaintiffs further offered evidence to prove, that the officers of the defendants, at the time of receiving the said altered notes, had in their possession a certain book, called the bank

1825.

U. S. Bank
v.
Bank of
Georgia.

note register of the said Bank of the State of Georgia, wherein were registered, and recorded, the date, number, letter, amount, and payees' name, of all the notes ever issued by the said bank, by means of which, and by reference whereto, the forgeries or alterations aforesaid could have been promptly and satisfactorily detected; and further, that so far as related to the said notes purporting to be the notes of 100 dollars, all the genuine notes of the defendants of that amount in circulation on the said 25th of February, 1819, were marked with the letter A., whereas twenty-three of the notes of 100 dollars each, so received by the defendants as genuine notes, when in fact they were altered notes, bore the letters B., C. or D.

And the defendants further offered evidence to prove, that the alteration in the said notes consisted in extracting the ink of certain printed figures and words which expressed the amount of said notes, and substituting therefor other printed figures and words; the signatures, and every other part of said notes, remaining unaltered. Whereupon, the parties having offered the above evidence, the plaintiffs prayed the Court.

1. To instruct the jury, that if they believed the said evidence, the said plaintiffs were entitled to recover of the said defendants the whole sum of 6,900 dollars, being the balance so exhibited by their customer's book aforesaid, and as due from the said defendants to the said plaintiffs; which instruction the Judges aforesaid, being divided

in opinion, refused to give ; and the counsel for the plaintiffs excepted to the refusal.

2. The plaintiffs prayed the Court to instruct the jury, that if they believed the evidence so given, the plaintiffs were entitled to recover of the defendants the sum of 690 dollars, being the original value of the altered notes; which instruction the said Judges, being divided in opinion, did not give ; to which refusal the said counsel for the plaintiffs excepted.

3. The plaintiffs prayed the Court to instruct the jury, that if they believed the evidence so given, the plaintiffs were entitled to recover of the defendants the whole sum of 6,900 dollars, being the balance so exhibited by their customer's book aforesaid, as due from the defendants to the plaintiffs, with legal interest thereon from the day of instituting their action aforesaid; which instruction the Judges aforesaid, being divided in opinion, refused to give ; to which refusal the counsel for the plaintiffs excepted.

Judgment being rendered upon this bill of exceptions, for the defendants in the Court below, the cause was brought, by writ of error, to this Court.

It was insisted, on the part of the plaintiffs, that the judgment ought to be reversed, on the following grounds:

1. That what took place on the 25th of February, 1819, between the parties, was not only equivalent to payment, but was payment itself; and the defendants are, in all respects, to be con-

1825.       sidered as if they were suing to recover back the
            money.

U. S. Bank      2. That if understood only as an acceptance,
v.          or agreement to pay, the principle would still be
Bank of
Georgia.    the same.

                3. That, in either case, the plaintiffs were en-
            titled to recover.

*March* 14th.   The cause was argued by Mr. *Sergeant*, for
            the plaintiffs,[a] and by Mr. *Berrien*, for the de-
            fendants.[b]

*March* 18th.   Mr. Justice STORY delivered the opinion of the
            Court.

                This is a case of great importance in a practi-
            cal view, and has been very fully argued upon
            its merits. The Bank of Georgia having ori-

            a He cited Bolton v. Richards, 6 *Term Rep.* 139. The Man-
            hattan Company v. Lidig, 4 *Johns. Rep.* 377. Levy v. Bank of
            United States, 4 *Dall. Rep.* 234. S. C. 1 *Binn. Rep.* 27. *Chit-*
            *ty on Bills*, 483. Smith v. Chester, 1 *Term Rep.* 655. Bass v.
            Clive, 4 *Maul. & Selw.* 15. Master v. Miller, 4 *Term Rep.* 320.
            Barber v. Gignell, 3 *Esp. N. P.* 60. Jordain v. Lashbrook, 7
            *Term Rep.* 604. Price v. Neal, 3 *Burr. Rep.* 1354. Jones v.
            Ryde, 5 *Taunt. Rep.* 488. Markle v. Hatfield, 2 *Johns. Rep.*
            462. Gloucester Bank v. Salem Bank, 17 *Mass. Rep.* 33. Smith
            v. Mercer, 6 *Taunt. Rrp.* 76. Meade v. Young, 4 *Term Rep.*
            28. Jenys v. Fowler, 2 *Str. Rep.* 946.

            b He cited Gates v. Winslow, 1 *Mass. Rep.* 66. Meade v.
            Young, 4 *Term Rep.* 28. *Kyd on Bills*, 202, 203. Lambert v.
            Oakes, 1 *Lord Raym.* 443. Union Bank v. Bank U. S. 3 *Mass.*
            *Rep.* 74. 1 *Johns. Cas.* 145. 5 *Johns. Rep.* 68. 2 *Term Rep.*
            366. Buller v. Harrison, *Cowp. Rep.* 565. Miller v Race, 1
            *Burr. Rep.* 457. 2 *Evans' Pothier*, 19. 495. Toby v. Barber.
            5 *Johns. Rep.* 72.

ginally issued the bank notes in question, they
were, in the course of circulation, fraudulently
altered, and having found their way into the Bank
of the United States, the latter presented them
to the former, who received them as genuine,
and placed them to the general account of the
Bank of the United States, as cash, by way of
general deposit. The forgery was not discover-
ed until nineteen days afterwards, upon which,
notice was duly given, and a tender of the notes
was made to the Bank of the United States, and
by them refused. Both parties are equally in-
nocent of the fraud, and it is not disputed, that
the Bank of the United States were holders,
*bona fide*, for a valuable consideration. Under
these circumstances, the question arises, which
of the parties is to bear the loss, or, in other
words, whether the plaintiffs are entitled to re-
cover, in this action, the amount of this deposit.

Some observations have been made as to the
form of the action, the declaration embracing
counts for the balance of an account stated, as
well as for money had and received, &c. But, if
the plaintiffs are entitled to recover at all, we see
no objection to a recovery upon either of these
counts. The sum sued for is the balance due
upon the general account of the parties, and it is
money had and received to the use of the plain-
tiffs, i. the transaction entitled the plaintiffs to
consider the deposit as money. It is, clearly,
not the case of a special deposit, where the iden-
tical thing was to be restored by the defendants;
the notes were paid as money upon general ac-

*margin:*
1825.

U. S. Bank
v.
Bank of
Georgia.

The form of action.

1825.
U. S. Bank
v.
Bank of
Georgia.

count, and deposited as such; so that, according to the course of business, and the understanding of the parties, the identical notes were not to be restored, but an equal amount in cash. They passed, therefore, into the general funds of the Bank of Georgia, and became the property of the bank. The action has, therefore, assumed the proper shape, and if it is maintainable upon the merits, there is no difficulty in point of form.

In general, a payment in forged paper is not good; but this does not apply to a payment made, *bona fide*, to a bank in its own notes.

We may lay out of the case, at once, all consideration of the point, how far the defendants would have been liable, if these notes had been the notes of any other bank, deposited by the plaintiff, in the Bank of Georgia, as cash. That might depend upon a variety of considerations, such as the usages of banks, and the implied contract resulting from their usual dealings with their customers, and upon the general principles of law applicable to cases of this nature. The modern authorities certainly do, in a strong manner, assert, that a payment received in forged paper, or in any base coin, is not good; and that if there be no negligence in the party, he may recover back the consideration paid for them, or sue upon his original demand. To this effect are the authorities cited at the bar, and particularly *Markle* v. *Hatfield*, (2 *Johns. Rep.* 455.) *Young* v. *Adams*, (6 *Mass. Rep.* 182.) and *Jones* v. *Ryde*, (5 *Taunt. Rep.* 488.) But, without entering upon any examination of this doctrine, it is sufficient to say, that the present is not such a case. The notes in question were not the notes of another bank, or the security of a third person, but

they were received and adopted by the bank as its own genuine notes, in the most absolute and unconditional manner. They were treated as cash, and carried to the credit of the plaintiff in the same manner, and with the same general intent, as if they had been genuine notes or coin.

Many considerations of public convenience and policy would authorize a distinction between cases where a bank receives forged notes purporting to be its own, and those where it receives the notes of other banks in payment, or upon general deposit. It has the benefit of circulating its own notes as currency, and commanding thereby the public confidence. It is bound to know its own paper, and provide for its payment, and must be presumed to use all reasonable means, by private marks and otherwise, to secure itself against forgeries and impositions. In point of fact, it is well known, that every bank is in the habit of using secret marks, and peculiar characters, for this purpose; and of keeping a regular register of all the notes it issues, so as to guide its own discretion as to its discounts and circulation, and to enable it to detect frauds. Its own security, not less than that of the public, requires such precautions

Under such circumstances, the receipt by a bank of forged notes, purporting to be its own, must be deemed an adoption of them. It has the means of knowing if they are genuine; if these means are not employed, it is certainly evidence of a neglect of that duty, which the public have a right to require. And in respect to persons

equally innocent, where one is bound to know and act upon his knowledge, and the other has no means of knowledge, there seems to be no reason for burthening the latter with any loss in exoneration of the former. There is nothing unconscientious in retaining the sum received from the bank in payment of such notes, which its own acts have deliberately assumed to be genuine. If this doctrine be applicable to ordinary cases, it must apply with greater strength to cases where the forgery has not been detected until after a considerable lapse of time. The holder, under such circumstances, may not be able to ascertain from whom he received them, or the situation of the other parties may be essentially changed. Proof of actual damage may not always be within his reach; and therefore to confine the remedy to cases of that sort would fall far short of the actual grievance. The law will, therefore, presume a damage actual or potential, sufficient to repel any claim against the holder. Even in relation to forged bills of third persons received in payment of a debt, there has been a qualification engrafted on the general doctrine, that the notice and return must be within a reasonable time; and any neglect will absolve the payer from responsibility.

If, indeed, we were to apply the doctrine of negligence to the present case, there are circumstances strong to show a want of due diligence and circumspection on the part of the Bank of Georgia. It appears from the statement of facts, that all the genuine notes of that bank of the de-

nomination of 100 dollars, in circulation at this time, were marked with the letter A; whereas twenty-three of the forged notes of 100 dollars bore the marks of the letter B, C, and D. These facts were known to the defendants, but unknown to the plaintiffs; so that by ordinary circumspection the fraud might have been detected.

The argument against this view of the subject, derived from the fact, that the defendants have received no consideration to raise a promise to pay this sum, since the notes were forgeries, is certainly not of itself sufficient. There are many cases in the law, where the party has received no legal consideration, and yet in which, if he has paid the money, he cannot recover it back; and in which, if he has merely promised to pay, it may be recovered of him. The first class of cases often turns upon the point, whether in good faith and conscience the money can be justly retained; in the latter, whether there has been a credit thereby given to or by a third person, whose interest may be materially affected by the transaction. So that, to apply the doctrine of a want of consideration to any case, we must look to all the circumstances, and decide upon them all.

Passing from these general considerations, it is material to inquire, how, in analogous cases, the law has dealt with this matter. The present case does not, indeed, appear to have been in terms decided in any Court; but if principles have been already established, which ought to

govern it, then it is the duty of the Court to follow out those principles on this occasion.

The case has been argued in two respects; first, as a case of payment, and, secondly, as a case of acceptance of the notes.

This is a case of actual payment.

In respect to the first, upon the fullest examination of the facts, we are of opinion, that it is a case of actual payment. We treat it, in this respect, exactly as the parties have treated it, that is, as a case where the notes have been paid and credited *as cash.* The notes have not been credited as notes, or as a special deposit; but the transaction is precisely the same as if the money had been first paid to the plaintiffs, and instantaneously the same money had been deposited by them. It can make no difference that the same agent is employed by both parties, the one to receive, and the other to pay and credit. Upon what principle is it, then, that the Court is called upon to construe the act different from the avowed intention of the parties? It is not a case where the law construes an act done with one intent to be a different act, for the purpose of making it available in law; to do that, *cy pres,* which would be defective in its direct form. Here the parties were at liberty to treat it as they pleased, either as a payment of money, or as a credit of the notes. In either way it was a legal proceeding, effectual and perfect; and as no reason exists for a different construction, we think that the parties, by treating it as a cash deposit, must be deemed to have considered it as paid in money, and then deposited; since that is the only

way in which it could legally become, or be treated as cash. Nor is there any novelty in this view of the transaction. Bank notes constitute a part of the common currency of the country, and, ordinarily, pass as money. When they are received as payment, the receipt is always given for them as money. They are a good tender as money, unless specially objected to; and, as Lord Mansfield observed, in *Miller* v. *Race,* (1 *Burr. Rep.* 457.) they are not, like bills of exchange, considered as mere securities or documents for debts. If this be true in respect to bank notes in general, it applies, *a fortiori,* to the notes of the bank which receives them; for they are then treated as money received by the bank, being the representative of so much money admitted to be in its vaults for the use of the depositor. The same view was taken of this point in the case of *Levy* v. *The Bank of the United States,* (4 *Dall. Rep.* 234. S. C. 1 *Binn. Rep.* 27.) where a forged check had been accepted by the bank, and carried to the credit of the plaintiff (a depositor) as cash, and upon a subsequent discovery of the fraud, the bank refused to pay the amount. The Court there said, " it is our opinion, that when the check was credited to the plaintiff as cash, it was the same thing as if it had been paid; it is for the interest of the bank that it should be so taken. In the latter case, the bank would have appeared as plaintiffs; and every mistake which could have been corrected in an action by them, may be corrected in this action, and none other." The case of *Bolton*

*margin:*

1825.

U. S. Bank
v.
Bank of
Georgia.

Bank notes are a part of the currency of the country; they pass as money; and are a good tender, unless specially objected to.

**1825.**

**U. S. Bank**
**v.**
**Bank of**
**Georgia.**

v. *Richards,* (6 *D. & E.* 138.) is not, in all its circumstances, directly in point; but, there, the the Court manifestly considered the carrying of a check to the credit of a party, was equivalent to the transfer of so much money in the hands of the banker, to his account.

Considering, then, the credit in this case as a payment of the notes, the question arises, whether, after a payment, the defendants would be permitted to recover the money back; if they would not, then they have no right to retain the money, and the plaintiffs are entitled to a recovery in the present suit.

Cases of forged bills of exchange.

In *Price* v. *Neale,* (3 *Burr. Rep.* 1355.) there were two bills of exchange, which had been paid by the drawee, the drawer's handwriting being a forgery; one of these bills had been paid, when it became due, without acceptance; the other was duly accepted, and paid at maturity. Upon discovery of the fraud, the drawee brought an action against the holder to recover back the money so paid, both parties being admitted to be equally innocent. Lord Mansfield, after adverting to the nature of the action, which was for money had and received, in which no recovery could be had, unless it be against conscience for the defendant to retain it, and that it could not be affirmed that it was unconscientious for the defendant to retain it, he having paid a fair and valuable consideration for the bills; said, "here was no fraud, no wrong. It was incumbent upon the plaintiff to be satisfied that the bill drawn upon him was the drawer's hand, before he accepted or paid it.

But it was not incumbent upon the defendant to inquire into it. There was notice given by the defendant to the plaintiff, of a bill drawn upon him, and he sends his servant to pay it, and take it up. The other bill he actually accepts, after which, the defendant, innocently and *bona fide*, discounts it. The plaintiff lies by for a considerable time after he has paid these bills, and then found out that they were forged. He made no objection to them at the time of paying them. Whatever neglect there was, was on his side. The defendant had actual encouragement from the plaintiff for negotiating the second bill, from the plaintiff's having, without any scruple or hesitation, paid the first ; and he paid the whole value *bona fide*. It is a misfortune which has happened without the defendant's fault or neglect. If there was no neglect in the plaintiff, yet there is no reason to throw off the loss from one innocent man upon another innocent man. But, in this case, if there was any fault or negligence in any one, it certainly was in the plaintiff, and not in the defendant." The whole reasoning of this case applies with full force to that now before the Court. In regard to the first bill, there was no new credit given by any acceptance, and the holder was in possession of it before the time it was paid or acknowledged. So that there is no pretence to allege, that there is any legal distinction between the case of a holder before or after the acceptance. Both were treated in this judgment as being in the same predicament, and entitled to the same equities. The case of *Neal* v.

*Price* has never since been departed from ; and, in all the subsequent decisions in which it has been cited, it has had the uniform support of the Court, and has been deemed a satisfactory authority. The case of *Smith* v. *Mercer*, (6 *Taunt. Rep.* 76.) was a stronger application of the principle. There, the acceptance was a forgery, and it purported to be payable at the plaintiff's, who was a banker, and paid it, at maturity, to the agent of the defendant, who paid it in account with the defendant. A week afterwards the forgery was discovered, and due notice given to the defendant. But the Court (Mr. Justice Chambre dissenting) decided, that the plaintiff was not entitled to recover. Two of the Judges proceeded upon the ground, that the banker was bound to know the handwriting of his customers ; and that there was a want of caution and negligence on the part of the plaintiff. The Chief Justice, without dissenting from this ground, put it upon the narrower ground, that during the whole week the bill must be considered as paid, and if the defendant were now compelled to pay the money back, he could not recover against the prior endorsers ; so that he would sustain the whole loss fiom the negligence of the plaintiff. The very case occurred in the *Gloucester Bank* v. *The Salem Bank*, (17 *Mass. Rep.* 33.) where forged notes of the latter had been paid to the former, and, upon a subsequent discovery, the amount was sought to be recovered back. The authorities were there elaborately reviewed, both by the counsel and the Court, and the conclusion to

which the latter arrived was, that the plaintiffs were not entitled to recover, upon the ground, that by receiving and paying the notes, the plaintiffs adopted them as their own, that they were bound to examine them when offered for payment, and if they neglected to do it within a reasonable time, they could not afterwards recover from the defendants a loss occasioned by their own negligence. In that case, no notice was given of the doubtful character of the notes until fifteen days after the receipt, and no actual averments of forgery until about fifty days. The notes were in a bundle when received, which had not been examined by the cashier until after a considerable time had elapsed. Much of the language of the Court as to negligence, is to be referred to this circumstance. The Court said, " the true rule is, that the party receiving such notes must examine them as soon as he has opportunity, and return them immediately. If he does not, he is negligent, and negligence will defeat his right of action. This principle will apply in all cases where forged notes have been received, but certainly with more strength, when the party receiving them is the one purporting to be bound to pay. For he knows better than any other whether they are his notes or not ; and if he pays them, or receives them in payment, and continues silent after he has had sufficient opportunity to examine them, he should be considered as having adopted them as his own."

Against the pressure of these authorities there not a single opposing case ; and we must,

therefore, conclude, that both in England and America, the question has been supposed to be at rest. The case of *Jones* v. *Ryde*, (5 *Taunt. Rep.* 488.) is clearly distinguishable, as it ranged itself within the class of cases, where forged securities of *third persons* had been received in payment. *Bruce* v. *Bruce*, (5 *Taunt. Rep.* 495.) is very shortly and obscurely reported; but from what is there mentioned, as well as from the notice taken of it by Lord Chief Justice Gibbs, in *Smith* v. *Mercer*, (6 *Taunt. Rep.* 77.) it must have turned on the same distinction as *Jones* v. *Ryde*, and was not governed by *Price* v. *Neal.*

But if the present case is to be considered, as the defendants' counsel is most solicitous to consider it, not as a case where the notes have been paid, but as a case of credit, as cash, upon the receipt of them, it will not help the argument. In that point of view, the notes must be deemed to have been accepted by the defendants, as genuine notes, and payment to have been promised accordingly. Credit was given for them, as cash, by the defendants, for nineteen days, and, during all this period, no right could exist in the plaintiffs to recover the amount against any other person, from whom they were received. By such delay, according to the doctrine of Lord Chief Justice Gibbs, in *Smith* v. *Mercer*, (6 *Taunt. Rep.* 76.) the prior holders would be discharged; and the case of the *Gloucester Bank* v. *The Salem Bank*, (17 *Mass. Rep.* 33.) adopts the same principle; so that there would be a loss produced by the negligence of the defendants

but, waiving this narrower view, we think the case may be justly placed upon the broad ground, that there was an acceptance of the notes as genuine, and that it falls directly within the authorities which govern the cases of acceptances of forged drafts. If there be any difference between them, the principle is stronger here than there; for there, the acceptor is presumed to know the drawer's signature. Here, *a fortiori*, the maker must be presumed, and is bound to know his own notes. He cannot be heard to aver his ignorance; and when he receives notes, purporting to be his own, without objection, it is an adoption of them as his own.

The general question, as to the effect of acceptances, has repeatedly come under the consideration of the Courts of common law. In the early case of *Wilkinson* v. *Luteridge,* (1 *Str.* 648.) the Lord Chief Justice considered, that the acceptance of the bill was, in an action against the acceptor, a sufficient proof of the handwriting of the drawer; but it was not conclusive. In the subsequent case of *Jenys* v. *Faucler,* (2 *Str.* 946.) the Lord Chief Justice would not suffer the acceptor to give the evidence of witnesses, that they did not believe it the drawer's handwriting, from the danger to negotiable notes; and he strongly inclined to think, that actual forgery would be no defence, because the acceptance had given the bill a credit to the indorsee. Subsequent to this was the case of *Price* v. *Neal,* already commented on, in which it was thought that the acceptor ought to be conclusively bound

. Effect of acceptances,
where the
handwriting of
the drawer has
been forged.

by his acceptance. The correctness of this doctrine was recognised by Mr. Justice Buller, in *Smith* v. *Chester*; (1 *D. & E.* 655.) by Lord Kenyon, in *Barber* v. *Gingell*, (3 *Esp. Rep.* 60.) where he extended it to an implied acceptance; and by Mr. Justice Dampier, in *Bass* v. *Cline*, (4 *M. & Selw.* 15.) and it was acted upon by necessary implication by the Court, in *Smith* v. *Mercer*, (6 *Taunt. Rep.* 76.) In *Levy* v. *The Bank of the United States*, (1 *Binn.* 27.) already referred to, where a forged check, drawn upon the bank, had been accepted by the latter, and carried to the credit of the plaintiff, and on the refusal of the bank afterwards to pay the amount, the suit was brought, the Court expressly held the plaintiff entitled to recover, upon the ground that the acceptance concluded the defendant. The case was very strong, for the fraud was discovered a few hours only after the receipt of the check, and immediate notice given. But this was not thought in the slightest degree to vary the legal result. "Some of the cases," said the Court, "decide that the acceptor is bound, because the acceptance gives a credit to the bill, &c. But the modern cases certainly notice another reason for his liability, which we think has much good sense in it, namely, that the acceptor is presumed to know the drawer's handwriting, and by his acceptance to take this knowledge upon himself." After some research, we have not been able to find a single case, in which the general doctrine, thus asserted, has been

shaken, or even doubted; and the diligence of the counsel for the defendants on the present occasion, has not been more successful than our own. Considering, then, as we do, that the doctrine is well established, that the acceptor is bound to know the handwriting of the drawer, and cannot defend himself from payment by a subsequent discovery of the forgery, we are of opinion, that the present case falls directly within the same principle. We think the defendants were bound to know their own notes, and having once accepted the notes in question as their own, they are concluded by their act of adoption, and cannot be permitted to set up the defence of forgery against the plaintiffs.

It is not thought necessary to go into a consideration of other cases cited at the bar, to establish, that the acceptor may show that the accepted bill was void in its origin, as made in violation of the Stamp Act; &c. for all these cases admit the genuineness of the notes, and turn upon questions of another nature, of public policy, and a violation of the laws of the land. Nor are the cases applicable, in which bills have been altered after they were drawn, or of forged endorsements, for these are not facts which an acceptor is presumed to know. Nor is it deemed material to consider in what cases receipts and stated accounts may be opened for surcharge and falsification. They depend upon other principles of general application. It is sufficient for us to declare, that we place our judgment in the present case, upon the ground, that the defendants were bound to know their

own notes, and having received them without objection, they cannot now recal their assent. We think this doctrine founded on public policy and convenience ; and that actual loss is not necessary to be proved, for potential loss may exist, and the law will always presume a possible loss in cases of this nature.

Rights of the plaintiffs under the cash deposit, not waived.

The remaining consideration is, whether there has been a legal waiver of the rights of the plaintiffs derived under the cash deposit, or, in other words, whether they have consented to treat it as a nullity. There is nothing on which to rest such a defence, unless it is to be inferred from the letter of Mr. Early, the Cashier of the Bank of the United States, under date of the 17th of March, 1819, addressed to the Cashier of the Bank of Huntsville. That letter contains information of the forgery of the notes, and then proceeds, "by the person which we shall in a few days send to your place, as heretofore intimated, we will forward these altered bills for the purpose of getting you to exchange them for other money." Now, there is no evidence that this letter was ever shown to the Bank of Georgia, or its contents ever brought to the cognisance of its officers. It states no agreement to take back the notes, or to transmit them, on account of the Bank of the United States, to Huntsville. For aught that appears, the intention may have been to transmit them on account of the Bank of Georgia, under the expectation that the latter might desire it. But what is almost conclusive on this point is, that on the same day the Bank of Geor-

gia had made a tender of the notes to the plaintiffs, which had been refused. This is wholly inconsistent with the notion that they had agreed to take them back, or to treat the previous credit as a nullity. Assuming, therefore, that the Cashier had a general or special authority for the purpose of extinguishing the rights of the plaintiffs, growing out of the prior transactions, (which is not established in proof,) it is sufficient to say, that it is not shown that he exercised such an authority. And the case of *Levy* v. *The Bank of the United States* affords a very strong argument, that a waiver, without some new consideration, upon a sudden disclosure, and under a mistake of legal rights, ought not to be conclusive to the prejudice of the party, where, upon farther reflection, he refuses to acquiesce in it. The subsequent letter of the 25th of March, demonstrates, that the intention of waiving the rights of the bank, if ever entertained, had been at that time entirely abandoned.

The letter from the Huntsville Bank, of the 4th of May, cannot vary the legal result. What might be the rights of the plaintiffs against that bank, in case of an unsuccessful issue of the present cause, it is unnecessary to determine. The contract, whatever it may be, is *res inter alios acta,* from which the defendants cannot, and ought not to derive any advantage.

It only remains to add, that if the plaintiffs are entitled to recover the principal, they are entitled to interest from the time of instituting the suit.

Upon the whole, it is the opinion of the Court, that the Circuit Court erred in refusing the first and third instructions prayed for by the plaintiffs; and for these errors the judgment must be reversed, with directions to award a *venire facias de novo*. On the second instruction asked by the plaintiffs, it is unnecessary to express any opinion.

Judgment reversed accordingly.