By the Court, Cowen, J.
It is not perceived what advantage, direct or remote, Bentley can derive from the plaintiffs’ recovery, nor what he can lose by their failure. It is said, the plaintiffs will hold the money to be recovered in trust for the witness. This is not so. Their recovery or failure will neither add to nor take from their liability to him. Their recovery will not, as the defendants’ counsel supposes, estop them to deny that Bentley’s name was forged. The record and proceedings here would not, as such, be any evidence whatever between him and- the plaintiffs. The whole is but- a more solemn admission of the forgery; and his being sworn as a witness, adds nothing to its strength. in his favor. Should he sue the Montgomery County Bank, and should they plead payment, they would have the same right to contest the forgery as if this suit had never been; nor could any of the proceedings here be used as evidence against the witness, even though the plaintiffs should fail to establish the forgery against these defendants.
On the merits, there was nothing in the nature of the transaction to conclude the plaintiffs against showing the forgery. They had done no act giving currency to the bill on the strength of Bentley’s name. Even had they accepted it on the day when it was drawn, the defendants could have holden them concluded only in respect to the genuineness of the drawer’s name, he being their immediate correspondent. (Chit, on Bills, 336, 7, Am. ed. of 1839.) And the act of payment could amount to no more. (Id. id.) Neither acceptance, nor payment, at any time, nor under any circumstances, is an admission that the first, or any other endorser’s name is genuine. (Id. 628.) In point of title, then, the case of the defendants was the same as if the name of Bentley had not appeared on the bill.. They have obtained money of the plaintiffs without right, and on the exhibition of a forged title as a genuine one. The plaintiffs paid their money under the mistaken belief thus induced, that the name was genuine. To a note or bill payable to order, none but the payee can assert any title without the endorse *290 ment of such payee: not even a bona fide holder. (Id. 286, a, 430.) (a)
But it is said, the equities of the parties are equal, and the defehdants having possession, must prevail. No doubt the parties were equally innocent in a moral point of view. The conduct of both was bona fide, and the negligence or rather misfortune of both the same. It was the duty, or, more properly, a measure of prudence, in each to have inquired into the forgery, which both omitted. But this raises no preference at law or equity in favor of the defendants, but against them. They have obtained the plaintiffs’ money without consideration; not as a gift, but under a mistake. For the very reason that the parties were equally innocent, the plaintiffs have the right to recover; and that was conceded throughout, in the authority cited on another point by the defendants’ counsel. (United States Bank v. Bank of Georgia, 10 Wheat. 333, 354.) The whole course of argument and authority in that case, went on the fault of the party who paid the money. It was likened to the case of a bank paying a check, on which the name of the drawer was forged, which was again assimilated to the acceptance of a bill of exchange, where the drawer’s name is forged It was said that, in such cases, the payor or acceptor takes upon himself the knowledge of his correspondent’s hand writing, and shall be concluded. Even that is going a great way, unless some bona fide holder has purchased the paper on the faith of such an act. But it is sufficient to distinguish the case, that it goes on the superior negligence of the party paying or accepting. At page 355, the court draw an express distinction between the effect of acceptance or payment as a recognition of the drawer's, and the endorser’s hand writing. It is said, tire forgery of an endorsement is not a fact which the acceptor is presumed to know. And perhaps the decision in the case cited, should be rested entirely on -negligence in the bank of Georgia. (Vid. id. p, 344; also the case *291 of the Gloucester Bank v. The Salem Bank, 17 Mass. Rep. 33, cited 10 Wheat. 350.)
But, it is said, the plaintiffs here delayed giving notice of the forgery, from the 28th of March, till the 7th of June. Under what circumstances, is not disclosed; for the point of delay was not made at the trial. That is a sufficient reason why it should not be listened to here. But I am not willing to concede, that delay in' the abstract, as seems to be supposed, can deprive the party of his remedy to recover back money paid under the circumstances before us. It is said, the defendants had endorsers behind them; and by delay, they were prevented from charging them, by giving seasonable notice. Admit this to be so; the plaintiffs did not stand in the relation of a holder. They were the drawees, and advanced the money by way of payment. They would never, therefore, think of notice to the defendants, till they accidentally discovered the forgery. If there had been any unreasonable delay after such discovery, another question would be presented. I infer from the rigor of the case cited by the defendants’ counsel, (Cocks v. Masterman, 9 Barn. & Cress. 902,) that he would exact as great, indeed greater diligence in giving notice, than is necessary to fix an endorser. There, the plaintiffs had paid to • the defendants, the holders, an acceptance, purporting to be in the name of the plaintiffs’ customers. The bill was drawn payable at the plaintiffs’ bank. The next day, discovering the forgery, they, on the same day, gave notice to the defendants and the endorsers. This was held too late. The court even declined to give an opinion, whether notice on the very day of payment would have entitled the plaintiffs to recover; but held, that notice on the very day was at all events necessary, and that short of this, the plaintiffs were not entitled to recover. They said, the holder must not, by want of notice, be deprived of the right to take steps against the parties to the bill, on the very day' when it was paid; and they admitted that this was requiring one day increased diligence, beyond what would have been required in the ordinary case of dishonor. In the latter *292 case, they allowed that notice on the next day would have been in season. In a previous case of payment under the like circumstances, notice having been given on the very day, the bankers who paid for their customers, were allowed to recover. (Wilkinson v. Johnson, 3 Barn, & Cress. 428.) In this earlier case, the payment was tnade for the honor of endorsers, whose bankers the plaintiffs were. Both cases were treated by the court, as standing on the same principles, though, in the latter case, they do not put it distinctly on any principle. In tire earlier case, they said the .plaintiffs were not. the drawees, or acceptors, nor the agents of any supposed acceptors. The same thing may, I take it, be said of the latter case, though the plaintiffs assumed to pay for the acceptors. They could scarcely have intended to pay as mere agents for the acceptors, an act which would have extinguished the bill, and cut them off from a remedy against the- drawers and endorsers. Where a bill or note is payable at a bank, and no express direction given by the principal to the bank, on its coming in with endorsers, the bank, of course, takes the paper as a purchaser, or holder; and for its own indemnity, presents it to the principal for payment, on the very day, or as soon as may be. Thus, there is a good chance to detect the forgery of his name; and hurry the notices -to the other parties. Whatever forgeries there may be, are soon brought to light. In the earlier of the two cases cited, the court said, “ the general rule . of law is clear and not disputed, viz. that money paid under a mistake of facts, may be recovered back, as being paid without consideration.” In the latter case, the court do| not deny the rule, nor that it would apply to the case before them. But to enforce it, they require an almost impracticable diligence. I doubt whether this case can be sustained, except upon its own peculiar circumstances, if it can be sustained at all. In all the previous cases, where a- recovery had been denied, there' was carelessness, or delay, or both. Smith v. Mercer, (6 Taunt. 76,) was much like Cocks v. Masterman, and there had been a neglect to discover the forgery and give notice,- for *293 a week’s time. The case of Price v. Neale, (3 Burr. 1354,) was one of palpable neglect, in both payment and delay. Some other cases turn on similar principles. (Barber v. Gingell, 3 Esp. Rep. 60. United States Bank v. Bank of Georgia, and Gloucester Bank v. Salem Bank, before cited. Levy v. Bank of United States, 1 Binn. 27. 4 Dall. 234, S. C.) If Cocks v. Masterman is to be followed, it must, I think, be on the same principle. The plaintiffs paid on the faith of their crrespondents’ name. The former were not named as drawees; ' but they had a superior knowledge of their correspondents’ hand-writing, which they neglected to exert. It might, therefore, have been reasonable to require that they should overcome the objection of neglect, by such a speedy movement as to save all possible advantage to the holder, against the prior parties. But, where each party enjoys only the same chance > of knowledge, no case demands any thing more than rea-1 sonable diligence in giving notice, after a discovery of the I forgery. The common case of paying forged bank notes, is one instance. And navy and victualling bills, have been treated as standing on the same footing. (Jones v. Ryde, 5. Taunt. 488. Bruce v. Bruce, id. 495, note.) These are cases of transferring notes from one to another, which turn out to be unavailable by reason of a forgery, in respect to which both parties are equally ignorant, the one being no more guilty of neglect than the other; indeed, neither being negligent, but both being imposed upon under the exercise of ordinary diligence. At all events, it does not lie with the payor to complain of the very neglect imputable to himself. Neglect to give notice, after discovering the forgery, is another matter. -(Vid. Chit, on Bills, Am. ed. of 1839, p. 463.) If the endorsers are to be charged, as such, .why should not the accidental delay in discovering the forgery, on a paid bill especially, operate as an excuse for not giving them immediate notice 1
The defendants did not disclose their agency, and must," therefore,- as between them and the plaintiffs, be taken to have acted as principals. They obtained the money of *294 the plaintiffs on a bill of exchange, payable to the order of Bentley, under a forged endorsement of his name. Money has been successively paid by mistake of the several endorsees, the plaintiffs, the defendants, the Bank of New-York, &c. and the remedy by each is plain. It is by action over, each against his respective endorser. . The bill has never been put in a regular course of negotiation, for want of Bentley’s name. No one who has advanced money on it, therefore, obtained what he supposed he had got; and the endorsers, beside being liable as such, may each be sued, as having received money without consideration.
The proof offered, relative to the custom of banks to collect paper received by them as agents, without communicating the name of their principal, would have disclosed a case in which it would be apparent that the defendants might or might not have been agents. The object of the proposed proof was, to supply the want of direct evidence, that notice of the agency had been given by them at the time. Till they had superadded proof of another custom, for banks never so to receive paper and collect as principals, the proposed evidence could have had no tendency to affect the plaintiffs with such notice. Knowledge that the defendants might be acting as agents, was not enough. This is so of every man ostensibly transacting business as a principal. (Vid. Mills v. Hunt, 20 Wendell, 433.) The proof offered and rejected was, therefore, irrelevant.
New trial denied.(a)

 The same general doctrine has been recently held in Louisiana. (Dick et al. v. Leverich, 11 Lou. R. (Curry,) 573.) And see Talbot v. Bank of Rochester, (post, p. 295.)

 See Talbot v. Bank of Rochester, post p. 295.