JUDGE WILLIAMS
delivered the opinion of the court:
The Bank of Kentucky having obtained a judgment against James L. Hutchcraft, appellant replevied it for him.
The execution had issued on the replevin bond when Offutt became uneasy, and much desired that the debt should be so arranged as to exonerate him from responsibility; consequently, he, in company with J. L. Hutch-craft, had an interview with A. W. Dudley, the president of the Frankfort branch of said bank, which was the *167 holder of the debt, and T. N. Lindsey, a director, and the attorney of said branch. In this interview, said J. L. Hutchcraft and Offutt presented a blank note, purporting to be on John A. Rice, Charles D. Talbut, and Reuben Hutchcraft, payable to said bank, negotiable and payable at said branch, and desired these gentlemen to use their influence with the directory to have said note taken for a sufficient amount to satisfy the execution, both assuring these gentlemen that the note was perfectly good, and would be promptly paid at maturity.
Both Dudley and Lindsey mentioned that John Hutch-craft was on the original paper, and he would be required on any new paper; and also stated that the directory might desire his, Offutt’s, name also. To this he responded, as both say, feelingly, that, as he was of advanced age, and desired to be “liberated” from responsibility, and had been at much trouble to get J. L. Hutchcraft to get up a good responsible note, he hoped this would not be required. Lindsey also stated to Offutt that he had no confidence in J. L. Hutchcraft’s representations; but that whatever he, Offutt, said, should be represented to the board of directors.
It was also suggested that a letter from some respectable man, known to the bank, representing the character of those obligors, would be advantageous. Both J. L. Hutchcraft and Offutt assured Dudley and Lindsey that John Hutchcraft would sign said note. Soon after which the said note was again presented, with his name attached to it, together with a letter from R. T. Davis, Esq., of Paris, stating that Rice, Talbut, Reuben and John Hutchcraft, were punctual, and amply good for ten thousand dollars; whereupon, the said branch bank discounted said note dated February 18th, 1862, at one hundred and sixteen days’ time, for four thousand one hundred *168 and thirty-eight dollars and fifty-eight cents, the proceeds of which were applied to the payment of said execution by the direction of the bank, and it was returned satisfied.
The bank did not learn that this note was a forgery until about May 1st, when, being put on inquiry by the inuendoes of some acquaintances, it was ascertained to be a probable forgery, and suit commenced against all the parties whose signatures purported to be to the note, and against J. L. Hutchcraft and Hillary Offutt, asking that the satisfaction of said execution be set aside and another execution on the replevin bond awarded. Rice, Talbut, Reuben and John Hutchcraft, all pleaded non est factum to the note, and no evidence of its genuineness was offered either by the bank or the obligors in the replevin bond. This can only be accounted for on the hypothesis that these parties were all satisfied of its spurious character.
Had it been genuine, J. L. Hutchcraft was most deeply v -interested in showing it, as, by so doing, he would have exonerated himself from liability to a prosecution for a most infamous crime. Offutt was at least interested in fixing responsibility on those parties, as thereby he could certainly exonerate himself from liability on the replevin bond.
The court set aside the return of satisfaction on the execution, and directed another execution on the replevin bond, from which Offutt prosecutes this appeal.
Appellant relies upon the case of the Bank of the United States vs. Bank of Georgia (10 Wheat., 333, or 6 Peters’ Cond. R., 120), in which the supreme court of the United States very ably reviews the general doctrine of liability in cases of forged instruments.
But this was a case in which the Bank of Georgia had received from the Bank of the United States, and credited *169 to her cash account, several thousand dollars of the notes of the former, which had been raised from the denomination of five to fifty dollars, and ten to one hundred dollars.
The court held that many considerations of public policy authorize a distinction between the cases of a bank’s receiving forged notes on itself and receiving such notes on other banks, because it has the benefit of circulating its own notes, and thereby commanding the public confidence. It is bound to know its own paper and provide for its payment, and must be presumed to use all reasonable ' means, by private marks and otherwise, to secure itself against forgeries. “ Under such circumstances (said the court), the receipt by a bank of forged notes purporting to be its own must be deemed an adoption of them.'''’ When payments have been made upon forged bills or indorsements, it is often an embarrassing question to determine who has been guilty of laches, and therefore must be the loser, as between parties who are uncontaminated with fraud and who otherwise stand upon equally favorable ground.
It has been generally held that an acceptor of even a forged bill is bound to an innocent holder, because, by the acceptance, he has given credit and currency to the bill, and it is his duty to know the signature of his correspondents ; nor can he recover back money so paid upon such forged bills. So, “if an indorser pays the bill under a forged indorsement of the name of a prior indorser, or of the drawer, he cannot recover back the money from any subsequent indorsee to whom he pays it, because his indorsement admits the genuineness of the antecedent indorsements, as well as the signature of the drawer of the bill. (Story on Bills, secs. 450, 451.
In Wilkinson vs. Johnson (3 Barn. & Cressw., 435, 7) Lord Tenterden, in delivering the opinion of the court, said: “ But it is by no means a matter of course to call *170 upon a person to pay a bill for the honor of an indorser; and such a call, therefore, imports, on the part of the person making it, that the name of a correspondent for whose honor the payment is asked is actually on the bill. The person thus called on ought certainly to satisfy himself that the name of his correspondent is really on the bill; but still, his attention may reasonably be lessened by the assertion, that the call itself makes upon him in fact, though no assertion may be made in words; and the fault, if he pays upon a forged signature, is not wholly and entirely his own, but begins, at least, with the person who thus calls upon him ; and though, where all the negligence is on one side, it may, perhaps, be unfit to inquire into the quantum, yet, where there is any fault in the other party,, and that other party cannot be said to be wholly innocent, he ought not, in our opinion, to profit by the mistake into which he may, by his own prior mistake, have led the other p arty; at least, if the mistake is discovered before any alteration in the situation of the other parties.
A greater diligence in the discovery and notice of a forgery seems to be required upon commercial than other paper, because the responsibility of antecedent parties may be lost, and this is a material consideration. But the situation, legal relation, and conduct of the parties, are the controlling considerations in the determination of their legal rights.
The bank in this case made the arrangement at Offutt’s instance and solicitation, for his benefit, and mainly on his representations.
Conceding that he practiced no fraud in fact, yet his statements and assurances were well calculated to lessen the plaintiff’s vigilance, both as to the genuineness of the signatures and responsibility of the parties. Before he gave the assurance of the 11 unquestionable'''' character of *171 the note, he should have known it was obligatory on the parties whose signatures purported to be to it; and beside, he had the assurance of Lindsey that the bank would rely on his representations to a great extent, if not entirely, and this before the second interview; therefore, his failure to ascertain whether the note was genuine, was the greater negligence in him. And whatever may be said of the negligence of the bank in not ascertaining the signatures, the first and grossest negligence, under the circumstances of this case, to say the least, began with appellant.
There is no proof in this case that the situation of the principal, Hutchcraft, changed after the discovery of the forgery, and before the suit was brought, some twenty days thereafter; indeed, the contrary may be inferred, as he is the only witness who speaks of his property, and he says he had some six head of horses and six or eight head of cattle, most of the latter thorough-bred cows, and that these were sold after he started South, in the spring of 1862; but this was most likely previous to May 1st, and neither he nor any one else fixes the value.
Even if it be conceded that Offutt was entitled to notice at all, under the circumstances of this case, we think the suit itself was a reasonable one, as its objects were two-fold — first, to ascertain whether the note was a forgery; second, to set aside the return on the execution if such prove to be the fact; and this suit was brought a month before the note, by its terms, was due.
But we are not prepared to determine, that, when a security in a replevin bond induces the creditor to accept the paper of other parties in discharge of his liability, on his own representations of the “ unquestionable” character of the paper, and it turns out to be a forgery, that he can be relieved for want of notice, unless he shows an actual *172 injury by the negligence of the creditor to give such notice.
The note being a forgery, there could legally be no proceeds with which to pay the execution; therefore, the order of the bank to satisfy it was a nullity; so should the return be considered. This will leave the execution as if no such return had been made from the date of the judgment canceling it.
It is insisted, however, that Offutt, being only surety, was released by the non-issual of an execution for a year; but it is proven that Offutt sought an indefinite stay of the execution, and signed a writing to remain bound however long the creditor might indulge. The writing is not in the case, but the parol evidence was not objected to, and must, therefore, be considered; hence he cannot claim exemption from responsibility on this account.
The cross-action of Offutt against John Hutchcraft was not disposed of by the court, and is still pending; therefore, we express no opinion as to the rights of these parties thereon.
Seeing no error in the judgment in favor of the bank against Offutt, it is affirmed, with damages.