By the Court.—Freedman, J.
As a general rule, money paid by one party to another through a mutual mistake of facts, may, on equitable grounds, be recovered. The mistake must not only be a mutual one, but must relate to a fact in respect to which both parties were equally bound to inquire. As thus stated, the principle applies to bills of exchange and other negotiable paper.
Hence in the Bank of Commerce v. Union Bank 3 Comst. 230, the drawee, who had innocently and before the receipt of advices, paid to the defendant a draft that had been raised in amount after it had been issued, was permitted to recover the money thus paid.
So in Goddard v. Merchants’ Bank, 4 Comst. 147, it was held, that the plaintiffs, who were not the drawees of the bill, but who stood in precisely the same position, having, as friends and correspondents of the supposed drawers, paid the bill for their honor to the notary who had the bill for protest and notice, were not chargeable with negligence, for the reason that when they left théir check at the office of the said notary, they did not have the opportunity of inspecting the instrument, and that consequently, on discovery of the forgery of the drawer’s signature, they were entitled to recover their money as paid under a mistake.
The drawee, however, is presumed to know the handwriting of the drawer, who is usually his customer or correspondent, and it is incumbent upon him to satisfy himself that the bill drawn upon him is the drawer’s hand, before he accepts or pays it, while it is not incumbent upon a dona fide holder to inquire into it. Heneé the acceptance or payment of a bill of exchange by the drawee, after opportunity for inspection, is an admission of the genuineness of the drawer’s sig *150 nature, which the drawee is not afterwards, in a controversy between himself and the holder, at liberty to dispute ; and if the drawer’s signature is on a subsequent day discovered to be a forgery, the drawee can not compel the holder to whom he paid the bill, to restore the money, unless such holder was in some way implicated in the fraud. In 1762 this principle was distinctly laid down by the court of king’s bench in the case of Price v. Neal, 3 Burrows, 1354, and since that time it has been so uniformly followed, that it has become a rule of right and of action among commereial and business men. In the language of Allen, J., who delivered the opinion of the court of appeals in the cases of The National Park Bank v. The Ninth National Bank, and The Same v. The Fourth National Bank, 46 N. Y. 77, a rule so well established, and so firmly rooted and grounded in the jurisprudence of the country, ought not to be overruled or disregarded. The rule is founded on the supposed negligence of the drawee in failing, by an examination of the signature when the hill is presented, to detect the forgery and to refuse acceptance or payment. It is an exception to the general rule that money paid under a mistake of fact may be recovered.
The same principle applies with equal, if not greater, force, to a case in which the forged paper has been paid by the party by whom it purports to be payable, for he ought to know better than any other his own signature' (Bank of United States v. Bank of Georgia, 10 Wheat. 333).
The difficulty in the case at bar arises in the application of the principle to" the peculiar facts of the case.
Allen, Stephens & Co., the plaintiffs, received from the Capital City Bank of Des Moines, Iowa, for collection, a certificate of deposit purporting to have been issued by-the firm of George Opdyke & Co., of the city *151 of New York, and on March 26, 1872, deposited it for credit and collection in The Fourth National Bank, with which they kept' an accouiit. This deposit was made pursuant to a custom or usage which the counsel for the respective parties, by written stipulation, admitted to be as follows:
“It is a custom and usage among banks and bankers to credit their depositors with all checks, drafts, and certificates of deposit deposited with them ; but such credit is subject to a counter charge, if the paper so deposited proves to be not good, and is returned to the party depositing it, in compliance with the usage of banks in respect to time and manner of return in such cases.”
This custom, therefore, formed an important and es: sential part of the contract for collection, by which the rights of the parties are to be determined. Ordinarily the relation between banker and depositor, is that of debtor and creditor. The banker, on receipt of the money, becomes the debtor of the depositor for the amount deposited, and the title to the deposit immediately passes to the banker (Ætna National Bank v. Fourth National Bank, 46 N. Y. 82 ; Oddie v. National City Bank of New York, 45 N. Y, 735 ; Bank of the Republic v. Millard, 10 Wallace, 152). But in this case the parties, by contracting ■with' reference to an existing custom, have adopted a somewhat different rule, and the question, therefore, is, whether the Fourth National Bank has performed its obligations to the plaintiffs under the said special contract.
It further appears from the stipulations of the parties:
I. That- there was, during the year 1872, an agreement between the defendant, the said Fourth National Bank, and the firm of George Opdyke & Co., to the effect, that the defendant should take up, each day, at the Clearing House in the city of New York, all com *152 mercial paper drawn upon said firm of Opdyke & Co., which should be presented there by the other banks belonging to the association of the Clearing House; that, upon being notified by the defendant of the amount of the paper so taken up, the said Opdyke & Co. should forthwith send a check for the amount so taken up, and thereupon receive such paper ; and that, if any portion of the paper so taken up should prove, upon inspection, not to be good, the said Opdyke & Co., upon sending back to the bank through which it came, before the close of the bank hours on the same day, should be entitled to a credit for the amount.
II. That on March 27, 1873, the defendant sent to George Opdyke & Co. a statement of the amount of commercial paper which defendant had received upon that day through the Clearing House for account of George Opdyke & Co., and which had been charged on the books of the Clearing House to the defendant, and that the amount of the alleged certificate of deposit described in the answer herein was included in such statement, although such alleged certificate had not been presented by the defendant at the Clearing House on that day ; that thereupon George Opdyke and Co. sent to the defendant a check for the total amount of ■such statement, including the amount of such alleged certificate ; that the defendant then delivered the paper so cleared with the said alleged certificate to the said George Opdyke & Co., before twelve o’clock, noon, on the said March 27, 1872.
The evidence further shows, that upon the receipt of the certificate, Opdyke & Co.’s cashier inspected it and passed it as genuine to the bookkeeper, and that between half past five and six o’ clock on that day, it was discovered by said bookkeeper, from an examination of the stubs of the certificate of deposit book, that the firm had never issued any such certificate. It was found that the signature of George Opdyke & Co. *153 thereto had been so skillfully forged, that the forgery conld not have been detected without an examination of the said book. Opdyke & Go. thereupon gave notice of the forgery to the plaintiffs the same evening, and also telegraphed notice thereof to the Capital City Bank of Des Moines.
William A. Stephens and Herman Blennerhassett, two of the plaintiffs, had previously been members of the firm of George Opdyke & Co., and consequently were well aware of the arrangement existing between said firm and the Fourth National Bank. If, with knowledge of the fact that, as between said parties, Opdyke & Co. had until the close of the bank hours (the precise time meant by this term does not appear), on March 27, to return the certificate as not good, and that up to said time the same had not been returned, the plaintiffs had assumed that the Fourth National Bank had completed the collection, and, acting upon such assumption, had done some act by which they would have incurred a liability to the Capital City Bank, the Fourth National Bank, unless authorized under the special contract with the plaintiffs, would, perhaps, have been estopped from relieving Opdyke & Co. from the consequences of their failure to detect the forgery within the bank hours of March 27. But the plaintiffs indulged in no such assumption ; they committed no such act, and incurred no such liability. They knew that' the Fourth National Bank had the right to return the certificate to them, if not good, and they were cautious enough not to commit themselves. They received Opdyke & Co.’s notice of the forgery prior to the making of any acknowledgment of the receipt of the certificate to the Capital City Bank ; and in the letter of acknowledgment which they subsequently did send, they stated the fact of the forgery. Consequently, the arrangement which existed between the Fourth National Bank and Opdyke & Co. as to the *154 return of worthless paper, cannot be held to have enured to the benefit of the plaintiffs, and it therefore was competent for said bank to waive a provision as to mere time, which was intended for its own exclusive benefit and protection. For it must be borne in mind, that the check sent by Opdyke & Co. to said bank on March 27, was not an absolute, but a conditional payment, which was to become absolute thereafter upon the happening of a certain event, and at the option of the bank. It was competent, therefore, on .the morning of March 28 for the bank to permit Opdyke & Co-, to return the certificate, with proof of the forgery, and to credit the amount thereof back to said firm.
On the day last referred to, the Fourth National Bank returned to the plaintiffs the certificate in question with a notice, that Opdyke & Co. had pronounced it a forgery, and that the amount thereof had been charged back to plaintiffs’ account. The plaintiffs declined to receive it or to recognize the right of the bank to charge back the amount, and they brought this action.
There is no allegation or suggestion of negligence in this case. The action is not founded upon any such theory. The plaintiffs claim the right to recover solely and purely upon the ground, that the Fourth National Bank actually collected from Opdyke & Co. the amount of the certificate; that under the rule first laid down in Price *. Neal, Opdyke & Co., after payment, could not set up the forgery, and that, consequently, the bank refunded to Opdyke & Co. the money in its own wrong. This would, perhaps, be so, provided the payment by Opdyke & Co. had been an absolute and unqualified one; and it would unquestionably be so, if an absolute and unqualified payment had been made after an inspection of the instrument. But it has already been shown, that the alleged payment was not only made before inspection, but that it was made *155 under a special arrangement ais a conditional and qualified one ; that, after the lapse of a certain time, it was, as between the parties to the arrangement, to become absolute at the option of the bank ; and that, as long, as the rights of third parties were not affected by an extension of time, it was competent for the bank to enlarge the time. The rule in Price v. Neal has never been extended to such a case. It applies whenever the drawee, after an opportunity for inspection, has actually and absolutely parted with his money to a bona fide holder, and brings suit to recover it, or has unreservedly obligated himself by an unqualified acceptance to pay, and resists payment. But it has never been applied so as to make a conditional payment an absolute one, and thus to create an estoppel, before a change in the position of the parties has taken place. On the contrary, as hereinbefore pointed out, even drawees, whose neglect to ascertain the forgery before payment was excusable, consistent with the existence of the rule, have been permitted to recover the money as paid under a mistake of fact.
The contract between the plaintiffs and the Fourth National Bank for the collection of the certificate being a special one, as above stated, the credit received by the plaintiffs in their pass book was a conditional one. The condition was, that it should be subject to a counter charge, if the certificate should prove to be not good. For the purpose of ascertaining whether or not it was good, the bank, according tofthe written admission of the parties, had all the time allowed by the usage of banks, in such a case. What such usage is or was, was not proved. But the fact being admitted that such a usage existed and formed part of the contract-, this court is bound to 'assume, in the absence cf evidence, that the time given by it was a reasonable one. Plaintiffs had the certificate only for collection,' and wanted no recourse. Notice to the Capital City *156 Bank could serve no purpose, because the certificate was a forgery, and because Charles Wood, who had fraudulently passed the certificate to said bank, was liable to it without notice. The party who fradulently puts forged paper in circulation, cannot avoid his liability to refund on the pretense of delay in detecting the forgery, or in giving notice of it. If reasonable dilligence is exercised in giving notice after the forgery cotoes to light, it is all'that any of the parties can require, and this rule applies not only to indorsers, but also to drawees to whom uo negligence is imputable in failing to detect the forgery (Bank of Commerce v. Union Bank, 3 Comst. 330; Canal Bank v. Bank of Albany, 1 Hill, 387). Upon the evidence as disclosed by the case, the Fourth national Bank returned the certificate with notice of its fraudulent character, and countercharged the amount within a reasonable time. Having secured by special contract the right to do this, the plaintiffs have no cause of complaint. If the usage required an earlier return than was made in point of fact, the plaintiffs, who proceeded upon the theory of an actual collection within the time contemplated by the special contract, should have shown it.
As the case stoocl, at the close of the evidence on both sides, the defendant had fully performed its obligations to the plaintiffs, and had not actually collected the'amount of the certificate, and consequently it was error to direct a verdict for the plaintiffs.
Defendant’s exceptions should be sustained, and the verdict should be set aside and a new trial ordered, with costs to the defendant to abide the event.
Monell, Ch. J., concurred.