Rapallo, J.
It is now settled, both in England and in this State, that money paid under a mistake of fact may be recovered back, however negligent the party paying may have been in making the mistake, unless the payment has caused such a change in the position of the other party that it would be unjust to require him to refund.
To this rule, however, there are some exceptions, established by decisions which have been so long acted upon that it is not proper to disturb them. One is, where the drawee of a draft or bill of exchange pays it to a bona fide holder, under the belief that the signature of the drawer is genuine, and it turns out to have been forged. It has been decided that the drawee is bound to know the signature of the drawer, and that if he accepts or pays he cannot recall his act. (Price v. Neal, 3 Burr., 1355 ; National Park Bank *214 of N. Y.. v. Ninth National Bank of N. Y., 46 B. Y. R.., 77.) So also it has been held that if one pays a draft, purporting to be accepted by him, he cannot afterward set up that the acceptance was a forgery, as against a bona fide holder to whom the payment was made. That he was bound to know his own signature. (Mather v. Lord Maidstone, 18 Com. B., 273.) And further, that if a bank pays what purports to be its own bills or receives them on deposit, and passes them to the credit of its customer, it cannot recall the payment, or revoke the credit on subsequently discovering that the bills had been fraudulently altered by raising their amounts. ( U. S. Bank v. Bank of Georgia, 10 Wheat., 333.)
The learned counsel for the appellant seeks to deduce from these cases a general principle that every party is bound to know his own obligations, and that after having recognized, and paid what purports to be Ms own obligation, he will not be permitted to allege a mistake in reference to its genuineness.
Language is used in some of the cases which appears to sustain this view; but this language must be construed with reference to the circumstances of the case in which it was used. It must also be borne in mind that the cases referred to are rather exceptions to a general rule than adjudications establishing a legal principle, and care must be taken, when applying them, to see that, in the case to which they are sought to be applied, all the conditions upon which the exception depends exist. (Goddard v. The Merchants' Bank, 4 Coms., 149.)
In all the cases referred to as falling within the exception, the alleged mistake consisted in the recognition as genuine of a forged signature, either of the party paying, or of his correspondent, whose signature he was held bound to know; and, in the case of the bank bills, in the recognition as genuine of bills issued by the bank itself, the body of which, as well as the signatures, were the work of the bank. In the case of the bank bills, considerations of public policy, connected with the character of the bills as currency, entered largely into *215 the reasoning of the court, and are much relied upon by Story, J., in the elaborate opinion which he delivered. But giving to the decision, for present purposes, its largest scope, it goes no farther than to hold that, in case of an alteration in the body of an instrument, the recognition of the altered instrument as genuine is binding upon the party who made the body as well as the signatures. And the distinguishing feature of all the cases is that the forgery ought to have been detected by a bare inspection of the instrument itself, without the necessity of reference to books or anything outside of the document presented, even the memory of the party as to the written obligations which he has issued.
In the present case it is contended that, when the check for fifty-six dollars was certified by the Bank of Commerce, such certification made it an obligation of that bank; that, when subsequently presented to the bank in its altered condition as a check for $15,006, the bank was bound to know its own obligation,-and to detect the forgery, and that the bank, by recognizing it as genuine and acquiescing in the payment through the clearing-house, precluded itself from afterward setting up its own mistake.
On general principles, mere negligence in making the mistake is not, as has been already shown, sufficient to preclude the party making it from demanding its correction. Such negligence does not give to the party receiving the payment the right to retain what was not his due, unless he has been misled and prejudiced by the mistake. If his loss had been incurred and become complete before the payment, he should not, in justice, be permitted to avail himself of the mistake of the other party to shift the loss upon the latter. To render it compulsory upon the courts to refuse a correction of the mistake, the facts of the case must bring it within the excepted ones before referred to. This the facts of the present case fail to do. The essential element is wanting, that the body of the instrument as well as the certification was the work of the bank, and that, therefore, it was conclusively presumed to know, by a mere inspection of the instrument, *216 whether or not it had been altei’ed. The bank was not bound to know the handwriting or genuineness of the filling up of the check. It was legally concluded only as to the signature of the drawer and its own certification. The rules of law in relation to the coi'rection of mistakes of fact have been gradually gro wing more liberal and are moulded so as to do equity between the parties. The exceptions which have been established by authority, and have been engrafted upon the commercial law, it is not our purpose to disturb; but they should not be extended; unless a case is clearly brought within them the general principles should govern. No ease has been cited, nor do I think any can be found, which holds that a payment by mistake, such as is shown in the present case, cannot be l-ecovered back.
If the defendant had shown that it had suffered loss in • consequence of the mistake committed by the plaintiff, as for instance if, in consequence of the recognition by the plaintiff „ of the check in question, the defendant had paid out money to its fraudulent depositor, then; cleai’ly, to the extent of the loss thus sustained, the plaintiff should be responsible. But it appears that all the money which Greenleaf, the fraudulent depositor, obtained from the Mechanics’ Banking Association, on the credit of the altei’ed check, was paid out on the sixteenth of February, the day before the check was presented to the plaintiff. On the sixteenth, Greenleaf drew out of the Mechanics’ Banking Association a lai’ger amount of money than that for which it had given him credit on the faith of the altered check, and he drew none afterward. The recognition of this check by the plaintiff, on the seventeenth of February, could not have had any influence upon the action of the Mechanics’ Banking Association in paying Greenleaf’s drafts on the sixteenth. The loss occasioned by those payments had been fully incurred by the Mechanics’ Banking Association before the plaintiff had made the mistake which it seeks in this action to have cori’ected.. Such being the case, thei:e is no equity in the claim of the Mechanics’ Banking Association to retain the money which it obtained from *217 the plaintiff through mistake, and thus to shift the loss which it had sustained, through the fraud of its own customer, from itself to the plaintiff.
Neither do we find anything in the conduct of the plaintiff, after the payment of the check, which should preclude it from reclaiming the money which it has paid. Delay in discovering and giving notice of the mistake is complained of; but the evidence shows that notice was given immediately on the discovery of the mistake, and it fails to show that, by the failure to receive earlier notice, any damage was sustained by the defendant. All the judges of the court below are agreed upon this branch of the case, notwithstanding their division upon the principal question.
The judgment should be affirmed.
All concur.
Judgment affirmed.