WILLIAM A. POUCHER, AS ADMINISTRATOR, ETC., OF ROBERT F. CHILD, DECEASED, APPELLANT, v. ROBERT C. SCOTT, AS EXECUTOR, ETC., OF ROBERT SCOTT, DECEASED, RESPONDENT.

*Presumption — a check is presumed to be given in payment of a debt due — evidence — when inadmissible as being too remote — when an administrator is debarred from testifying by section 829 of the Code of Civil Procedure.*

This action was brought to recover $2,000 alleged to have been loaned by the plaintiff's intestate to the defendant's testator. It appeared upon the trial that on June 5, 1874, the plaintiff's intestate drew from a savings bank in Oswego the sum of $2,000 then due to him; receiving the same in two checks, each for $1,000, payable to cash or bearer. The intestate, who had formerly been employed in the custom-house, but was not at the time engaged in any business, had been living for a year or more with the defendant's testator, Scott, and died in the latter's house in March, 1875. On June 6, 1874, both of the checks given to the intestate were in the hands of Scott, and were by him used in the payment of a debt due from him. They were paid by the banks upon which they were drawn in the usual course of business.

*Held*, that the evidence was insufficient to establish a loan of the $2,000 from the intestate to Scott, and that the complaint was properly dismissed.

Upon the trial the plaintiff having stated that he knew the intestate and was acquainted generally with his circumstances, was asked to state what he knew in regard to his means and circumstances during the last four years of his life.

*Held*, that the question was properly excluded as the evidence called for was too remote.

That it was also proper to exclude proof of the amount of the estate that came into the plaintiff's hands.

The plaintiff sought to testify as to conversations had by him with Scott, after the death of the intestate, one before and one after letters of administration had been issued to him.

*Held,* that the evidence was inadmissible under section 829 of the Code of Civil Procedure, because the plaintiff was a party to the action and because he was interested in the event thereof.

APPEAL from a judgment, entered in Oswego county, on the report of a referee, dismissing the plaintiff's complaint with costs.

The action was brought to recover money alleged to have been loaned by the plaintiff's intestate, on the 6th day of June, 1874, to the defendant's testator, in the city of Oswego. The intestate kept an account in the Oswego City Savings Bank, and on the 5th day of June, 1874, applied to the bank to have the account written up, and in payment of the balance found due to him, he received from the bank two checks in the words and figures following, to wit :

"OSWEGO, N. Y., *June 5th,* 1874.

"Lake Ontario National Bank, pay to cash                  or bearer, one thousand dollars ($1,000).

"L. E. GOULDING,

"*Secretary.*"

"OSWEGO, N. Y., *June 5th,* 1874.

"The First National Bank, pay to cash or bearer, one thousand dollars ($1,000).

"L. E. GOULDING,

"*Secretary.*"

The answer contained a general denial of the allegations in the complaint, in respect to the alleged loan of money, and several set-offs and counter-claims and the statute of limitations.

After the case was at issue and before the trial, Robert Scott, the testator, died, and his executor, Robert C. Scott, was substituted in his place as defendant. The executor applied to the referee for leave to amend his answer, by pleading judgment, payment and release, which was granted and the plaintiff excepted. The defendant thereupon pleaded in defense payment and a release. Upon the trial the referee made the following findings :

*First.* Robert F. Childs, the plaintiff's intestate, died at Oswego on the 23d day of March, 1875.

*Second.* That he died at the house of Robert Scott, the defendant's testator.

*Third.* That the said Robert F. Childs had been living at the

house of the said Robert Scott for one year or more immediately prior to his death.

*Fourtn.* That for several years before his death the said Robert F. Childs had been an employe of the custom-house at Oswego city, and had not been engaged in any active business.

*Fifth.* On the 22d day of April, 1875, letters of administration on the goods, chattels and credits of the said Robert F. Childs, were duly issued by the surrogate of Oswego county, to the plaintiff in this action, and he thereon became and still is the administrator of said estate.

*Sixth.* That on and before the 5th day of June, 1874, said Robert F. Childs had on deposit in the Oswego Savings Bank $2,000 or over, drawing interest.

*Seventh.* That during the year before his death, on the said 5th day of June, 1874, said Robert F. Childs drew $2,000 he so had on deposit in the Oswego County Savings Bank, and received the same in two checks, signed by L. E. Goulding as secretary of said savings bank, copies of which have been given above.

*Eighth.* That on June 6, 1874, the day after said checks were delivered to said Robert F. Childs, both of said checks were in the hands of said Robert Scott, deceased, and he on that day appropriated the same to his own use, by paying the same to Noble and McFarlane on a contract he and others had with them.

*Ninth.* This action was commenced against Robert Scott in his lifetime, and on the 11th day of March, 1880, and afterwards, and on April 3, 1882, said Scott died, leaving a will which was duly proved, and letters testamentary thereon were duly issued to Robert C. Scott, the defendant, on June 15, 1882, and he was substituted as defendant herein in place of Robert Scott on the 22d of August, 1882.

The referee also found, viz., that there is no evidence how or from whom the said Robert Scott received the said checks, or either of them; that the checks were paid by the said bank, from which the same were drawn in the course of business. He also found and decided as a matter of law that the plaintiff had not made out a cause of action against the defendant, and that the complaint of the plaintiff should be dismissed, and that the defendant recover of the plaintiff the costs and disbursements of the action, and judg-

ment was ordered accordingly. The plaintiff requested the referee to find and hold that the evidence was sufficient to sustain the finding that Robert Scott, now deceased, got the checks of Robert Childs, deceased, on the 5th or 6th of June, 1874. The referee refused so to find or hold and plaintiff excepted.

The plaintiff also asked the referee to find and hold that said Robert F. Childs, deceased, was the owner of and in the possession of said two checks on the 5th day of June, 1874, and said Robert Scott got possession of the same on the 5th or 6th of June, 1874, and appropriated the same to his own use, and there is no evidence that said Childs consented thereto, or knew that said Scott had possession of the said checks or had appropriated the same to his own use. The referee refused so to find or hold, and plaintiff excepted. Plaintiff also asked the referee to find and hold that it is a question of fact for the consideration of the referee in this case whether said Robert Scott, deceased, was indebted to Robert F. Childs, deceased, at the time of the death of said Childs or not. The referee refused so to find or hold, and plaintiff excepted.

The plaintiff also requested the referee to rule as a matter of law, that from the facts and proofs, and the circumstances surrounding this case, there is no legal presumption that the said Robert Childs on the 5th or 6th of June, 1874, owed to Robert Scott $2,000. The referee refused so to rule and plaintiff excepted. The plaintiff requested the referee also to rule as a matter of law that on or about June 6, 1874, said Robert Scott, now deceased, became indebted to said Robert Childs, now deceased, in the sum of $2,000. The referee refused so to find and plaintiff excepted. Plaintiff also requested the referee to rule as a matter of law that the plaintiff was entitled to judgment against the defendant for $2,000, and interest thereon, and the report of the referee directing judgment for that sum. The referee declined so to rule and plaintiff excepted.

The plaintiff offered evidence of the means and circumstances of the said Robert F. Childs prior to and up to his death. The referee excluded the same and plaintiff excepted. The plaintiff offered evidence of the amount of the Childs' estate that came to the hands of his administrator, and the referee excluded it, and the plaintiff excepted. The plaintiff also offered to prove admissions and state-

ments of Robert Scott, deceased, made to him before and after the plaintiff was appointed administrator. The defendant objected on the ground that the administrator was not a competent witness, and the evidence was excluded for that reason.

*William Tiffany,* for the appellant.

*S. C. Huntington* and *D. P. Morehouse,* for the respondent.

HARDIN, J.:

After the evidence offered by the plaintiff was received and closed, the referee came to the conclusion that it was his duty to grant a nonsuit. The rule is well settled that where the evidence is insufficient to warrant the verdict of a jury, or a finding of facts favorable to the plaintiff sufficient to support a judgment in his favor, it is the duty of the court to grant a nonsuit. (*Deyo* v. *N. Y. C. R. R. Co.,* 34 N. Y., 13.)

While the checks were in the hands of Childs, on the 5th of June, 1874, the fact that he received them from the savings bank, and the possession of them, concur in establishing that he was then the owner of the checks, as the checks were payable to bearer when they were found in the possession of Scott, the presumption attached to them is that Scott was the owner of them. There was no evidence offered in the progress of the trial indicative of the manner in which Scott became possessed of the checks. There was no evidence indicative of the manner or time when Childs parted with or surrendered the possession of the checks. As we have already said, the possession of the checks by Scott at that time, the sixth of June, as they were payable to bearer, was presumptive evidence that he was owner of them, and that he came rightfully into the possession of them. We think the evidence warranted the referee in applying the principle laid down in the Court of Appeals in *Koehler* v. *Adler* (78 N. Y., 290).

In that case Chief Justice CHURCH, in the course of his opinion, says, viz.: " It is not claimed that this check is evidence of money loaned, but, on the contrary, the presumption is that it was paid upon some debt or obligation owing by plaintiff." We are inclined to think that if the fact appeared that the checks were passed directly between the hands of Childs and Scott without an explanation of

the circumstances, the proper inference to be drawn therefrom would be that they were delivered in payment of a debt, and that no inference of an indebtedness would arise from such facts.

In the second volume of Greenleaf on Evidence (§ 112) it is said, viz.: "In proof of the count for money lent it is not sufficient merely to·show that the plaintiff delivered money or a bank check to the defendant; for this, *prima facie*, is only evidence of the payment by the plaintiff of his own debt antecedently due the defendant." It has been repeatedly held that the delivery of a promissory note by one party to another, or the delivery of a check by one party to another, gave rise to the presumption that the delivery was made to liquidate an indebtedness from the maker to the payee.

We have found no evidence in the case changing that presumption, attending the possession of the checks by Scott. They may have been paid to him for an antecedent indebtedness by Childs, or Childs may have put them afloat in commercial channels and some creditor of Scott may have become possessed of them and paid them to him, or even made a gift thereof to him. Speculation and guesses are insufficient to establish an indebtedness on the part of Scott for the checks. The presumptions to which we have alluded are legitimately in his favor, and they continue to be a perfect protection to him and his estate, unless the contrary thereof is established by evidence. We have looked carefully through the evidence, in vain, to find in it anything to overcome the presumption to which we have alluded. The *onus* was upon the plaintiff, and as the plaintiff failed to establish any indebtedness on the part of Scott to Childs, we think the conclusion of the referee was correct. There was such a lack of proof of the essential fact of the plaintiff's alleged cause of action, that a verdict of a jury would not be allowed to stand in favor of the plaintiff, and it was therefore proper for the referee to hold and decide, as a matter of law, that the plaintiff failed to make out a case. (*Scofield* v. *Hernandez et al.*, 47 N. Y., 313.)

*Second.* During the trial, while the plaintiff was on the stand as a witness, he stated he knew Childs in his lifetime, and that Childs had been collector of customs in the city of Oswego, and that he was acquainted generally with his circumstances. Then the witness was asked the following question, viz.: "Will you state in regard

to his means and circumstances since about 1870, during the last four years of his lifetime ?" This question was objected to and the objection sustained. It is now insisted by the appellant that the referee erred in the ruling. We think, however, that the evidence was too remote, and that it was not error to exclude it. (*Carroll, executor, etc.*, v. *Deimel et al.*, 18 Weekly Digest, 549.) In that case a payment was in dispute, and it was held that evidence that a " party made no deposit of a certain amount about the time a payment is claimed to have been made to such party, is not competent to disprove the fact of such payment." (*Nicholson* v. *Waful*, 70 N. Y., 604.) In that case evidence was offered of acts and declarations, some two or three years prior to the alleged loan, inconsistent with the loan of money, by the lender, and it was excluded. The court held that the evidence excluded was too remote and inconclusive, and the rejection thereof was not error.

*Moore* v. *Meacham* (10 N. Y., 211) is an authority for saying that the presumption in the absence of proof 'was that the intestate was solvent, and for that reason proof that the party was in good credit, established nothing more than the presumption, and although such proof was given it furnished no satisfactory ground for alleged error. The question presented to us in *Nicholls* v. *Van Valkenburgh* (15 Hun, 230) differs from the one now before us. That related to the improbability of a note being allowed to remain over-due for several years, without any demand of payment or attempt to collect the same, and we thought this evidence of circumstances of the party was admissible to give rise with other evidence to a presumption that, if the note had been a valid claim, it would probably have been demanded and its payment enforced, and we relied somewhat on the case of *Waddell* v. *Elmendorf* (10 N. Y., 170). There evidence showing the embarrassment and insolvency of a judgment debtor was held to be competent, as tending to rebut the presumption of payment of a judgment recovered in 1810.

*Third.* Plaintiff sought on the trial to prove what was the amount of Childs' estate that came into his hands as administrator. This was objected to as irrelevant, incompetent and inadmissible, and the objection was sustained and plaintiff excepted. We fail to see how the extent of assets which had come into the hands of the administrator could be made to shed any light upon the issue presented by

the pleadings, or to bear upon the question whether or not the intestate had made a loan to the testator. We are not prepared to say there was any error in this ruling. Plaintiff sought to prove by himself as a witness that he had a conversation with the testator a few days after the death of the intestate, and before letters of administration were issued to him in respect to the two checks, and also a conversation had in April, 1878, in respect to the two checks, and the statement and conversation of the testator in respect to the same.

The evidence was objected to on the ground that the witness was not competent under section 829 of the Code. Was there any error in excluding this evidence? It is provided in that section, viz.: "A party or person interested in the event * * * shall not be examined as a witness in his own behalf or interest * * * against the executor, administrator, or survivor of a deceased person * * * concerning a personal transaction or communication between the witness and the deceased person." We are of the opinion that the administrator was a party to this action. We cannot divorce him from the office of administrator, and say that he was not a party and that the real party to the action was the office of administrator. The personal transaction or communication sought to be shown took place between the witness and the deceased person.

*Fourth.* Plaintiff was a person interested in the event of this action. "A recovery in this action would enhance the fees which the plaintiff, as administrator, would be entitled to; it would save the plaintiff from liability to costs. The testimony which he sought to give, was offered in his own behalf or interest."

We think he was not a competent witness to give the conversations or transactions between himself and the deceased testator. He is made incompetent by the letter and spirit of section 829. (*Steele* v. *Ward*, 30 Hun, 555; *Allen* v. *Blanchard*, 9 Cow., 633; *Church* v. *Howard*, 79 N. Y., 415; *Willis* v. *Montgomery*, 78 id., 282; *Butler* v. *Warren*, 11 Johns., 58.)

In the case last cited it was said, "the rule is stubborn and inflexible that if a witness has a direct interest, however small, in the event of the cause, he cannot be admitted to testify upon the trial in favor of that interest in any respect or degree." Phillips on Evi-

dence (vol. 1, p. 81) says : " The law looks on a witness as interested where there is a certain benefit or disadvantage attending the consequence of the cause one way." We are of the opinion that section 829 has not made a witness situated as plaintiff is, in respect to conversations and communications sought to be proved, a competent witness. (*Hill* v. *Alvord*, 19 Hun, 79.)

Plaintiff sought to use his own testimony " in his own behalf or interest," and the objection therefore was well founded. (*Ely* v. *Clute*, 19 Hun, 36 ; *Hill* v. *Hotchkin*, 23 id., 414.)

*Hall* v. *Richardson* (22 Hun, 445) does not aid the appellant. That was an action against Richardson, personally, based upon his individual agreement and not on any agreement mady by him as executor or by his testator. Nor does *Champlin* v. *Seeber* (56 How., 46) aid the appellant. In that case the witness was not called to speak of transactions and communications had with the deceased person against the administrator, executor, heirs-at-law, devisee or survivor of such person. Having found no legal error in the course of the trial, the judgment entered on the report of the referee should be affirmed.

SMITH, P. J., and BARKER, J., concurred.

Judgment affirmed.