Hillsborough-northern judicial district
No. 96-119

### HILCO, INC. AND DIVERSIFIED FINANCIAL SYSTEMS, INC.

v.

### HALSTON O. LENENTINE AND JANET M. LENENTINE

*August 14, 1997*

*Roberts & Cohen, P.A.*, of Portsmouth (*Sanford Roberts* on the brief and orally), for the plaintiffs.

*Normandin, Cheney & O'Neil*, of Laconia (*Duncan J. Farmer* on the brief and orally), for the defendants.

THAYER, J. The defendants, Halston and Janet Lenentine, appeal the Superior Court's (*Groff*, J.) order subordinating their mortgage to the mortgages held by the plaintiffs, Hilco, Inc. (Hilco) and Diversified Financial Systems, Inc. (Diversified). We reverse and remand.

The trial court found the following facts. In May 1985, Halston Lenentine entered into an agreement to sell certain real estate in Tilton to Ronald C. Mizner. Mizner obtained financing from the Lenentines and a guaranteed loan from the Small Business Administration. After closing, Meredith Bank and Trust Company (Meredith Bank) recorded a first mortgage for $135,000 on the Tilton property. The Lenentines recorded a second mortgage for the amount of $37,000 on the property. Although the Lenentines' mortgage had not been executed at the time of the closing on

Meredith Bank's first mortgage, the bank was aware that the Lenentines' mortgage would be executed and would assume a position of second in priority.

Mizner also secured the financing of his real estate purchase by mortgaging property he owned in Meredith. Specifically, Meredith Bank took a third mortgage and the Lenentines took a fourth mortgage on Mizner's Meredith property. Laconia Federal Savings and Loan Association (Laconia Federal) and Plymouth Guarantee Savings Bank (Plymouth Bank) had been previously granted two other mortgages on the Meredith property.

Mizner defaulted on the Lenentine note after making nine payments. In November 1988, the Small Business Administration foreclosed on Mizner's Tilton property, resulting in a deficit. Mizner then restructured Meredith Bank's mortgage resulting in the payment and discharge of the mortgages held by Laconia Federal and Plymouth Bank, the discharge of Meredith Bank's mortgage, and a settlement with the Small Business Administration. Two new mortgages, given to Meredith Bank in the amounts of $67,500 and $63,092.85, were recorded in replacement of the three discharged mortgages. As a result of the negligence of the bank's counsel, the Lenentines' mortgage was not discovered.

In November 1990, Meredith Bank's successor, First Central Bank, restructured the $67,500 mortgage and advanced additional funds so that the mortgage was now for $80,000. In addition, First Central Bank's two existing mortgages were discharged, and two different mortgages were recorded in their place — one for $80,000 and the other for $58,729.32. Again, the Lenentines' mortgage was not discovered.

First Central Bank's successor, First NH Bank, assigned the $80,000 mortgage to Hilco and sold the $58,729.32 mortgage to Diversified. The Meredith property, appraised at $87,000, was eventually foreclosed on and sold for $68,500. At that time the defendants' mortgage apparently had been discovered, and the parties agreed that the Lenentines would receive $20,000 of the proceeds, leaving the balance of the proceeds in dispute.

The plaintiffs brought a petition for declaratory judgment to determine the priority of the mortgages on the Meredith property in order to disburse the balance of the sale's proceeds. The superior court found that the mortgages were discharged under circumstances entitling the plaintiffs to equitable relief in order to restore the original mortgages with their original positions of priority, reasoning that had the parties been aware of the Lenentines' mortgage, the restructuring would not have occurred without an

agreement from the Lenentines to subordinate their mortgage. The court opined that the plaintiffs should be entitled to rely on their counsel's title search which did not uncover the Lenentines' mortgage. The superior court determined that Hilco and Diversified were equitably subrogated to Meredith Bank's position under the original mortgage, a position of priority over the Lenentines' mortgage. As such, the court ruled, the Lenentines have no claim to the remaining disputed proceeds of the foreclosure sale.

The Lenentines appealed, arguing that the superior court erred in applying equitable principles to restore the original mortgages held by Meredith Bank to their position of priority. In response, the plaintiffs contend that the principles underlying our race-notice recording system support the trial court's order, and that equitable intervention is appropriate in this case.

The propriety of granting equitable relief rests within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Decker v. Decker*, 139 N.H. 588, 590, 660 A.2d 1112, 1114 (1995).

In deciding the relative positions of the parties, the trial court relied on the principle that "[w]hen a new mortgage is substituted in ignorance of an intervening lien, the mortgage released through mistake may be restored in equity and given its original priority as a lien." *Caron v. Association*, 90 N.H. 560, 564, 10 A.2d 668, 670-71 (1940) (quotation omitted); *see also* 55 AM. JUR. 2D *Mortgages* §§ 470, 477 (1996). Before the first restructuring of the Meredith Bank mortgage, the Lenentines' mortgage was fourth in priority. When the three mortgages of higher priority were discharged, the Lenentines' mortgage became first in line, "[u]nless, for some adequate reason, equity does not follow the law in this instance." *Caron*, 90 N.H. at 562, 10 A.2d at 669.

The plaintiffs invoke equity to relieve them from the result that would follow from the established order of priority as dictated by our recording system. We must guard the integrity and reliability of our recording system, viewing claims to circumvent the established order of priority, through resort to equity, with trepidation. Our recording statutes serve an essential purpose, ensuring notice to the public of property interests, thereby protecting "both those who already have interests in land and those who would like to acquire such interests." *Amoskeag Bank v. Chagnon*, 133 N.H. 11, 14, 572 A.2d 1153, 1155 (1990).

Accordingly, the result in this case will depend upon the strength of the plaintiffs' case for equitable intervention, and not

upon any supposed weakness of the Lenentines' equitable position. *See Caron*, 90 N.H. at 562, 10 A.2d at 670. Ignorance and deceit are factors that in some circumstances we have recognized as weighing the equities in favor of restoring a previously discharged mortgage. *See id.* at 564, 10 A.2d at 671. The plaintiffs do not allege deceit, and excusable ignorance is not present here. The plaintiffs had constructive notice of the Lenentines' recorded mortgage, *cf. id.* at 565, 10 A.2d at 671, and we hold that the trial court abused its discretion when it allowed the plaintiffs to be shielded by equity from the consequences of their agent's negligence in not discovering the Lenentines' mortgage. *See* 55 AM. JUR. 2D *Mortgages* § 477; 59 C.J.S. *Mortgages* § 282(c)(2) (1949).

Before concluding our analysis, we address the plaintiffs' misplaced reliance on *Laconia Savings Bank v. Vittum*, 71 N.H. 465, 52 A. 848 (1902), in support of applying equitable principles to restore the original mortgages. In sum, the plaintiffs argue that the Lenentines intended their mortgage to be subject to the original mortgages, and as such, the Lenentines would not be prejudiced if the plaintiffs' mortgages took priority over the Lenentines' mortgage. In *Caron*, a case decided after *Laconia Savings Bank*, we explained that where a party stands upon his or her legal rights to establish priority, the weakness of his or her equitable position is irrelevant. *See Caron*, 90 N.H. at 562, 10 A.2d at 669-70. Thus, our inquiry focuses entirely upon the equitable arguments in favor of the *plaintiffs'* position; to the extent that *Laconia Savings Bank* suggests otherwise, it is not controlling.

The plaintiffs' remaining arguments regarding the principles of race-notice and bona fide purchasers are misdirected. The plaintiffs essentially contend that the Lenentines are precluded from ascending in priority upon the discharge of the other mortgages because the Lenentines were aware of Meredith Bank's prior superior mortgage. This argument must fail because the time for determining the priorities between the plaintiffs' new mortgages and the Lenentines' mortgage occurred when the new mortgages were recorded in place of the discharged mortgages. The question then is whether the plaintiffs had notice of the Lenentines' interest, a question which we have already addressed.

*Reversed and remanded.*

All concurred.