2011 DNH 056

**GREEN TREE SERVICING, LLC**

v.

**UNITED STATES of America et al.**

**Civil No. 09–cv–191–JL.**

United States District Court, D. New Hampshire.

April 1, 2011.

Order Denying Motion for Reconsideration Aug. 4, 2011.

---

Jeffrey J. Hardiman, Bendett & McHugh PC, Farmington, CT, for Green Tree Servicing, LLC.

Austin L. Furman, U.S. Dept. of Justice, Washington, DC, for United States of America.

Albert E. Souther, Law Office of Albert E. Souther, Dover, NH, for Dana E. Ricker, Kristi L. Ricker.

### OPINION AND ORDER

JOSEPH N. LaPLANTE, District Judge.

This case raises several questions about the availability of equitable relief to restore a mistakenly discharged mortgage to a position of priority over subsequent federal tax liens. The plaintiff, Green Tree Servicing, LLC, claims that its predecessor erroneously recorded a discharge of its mortgage on a parcel owned by defendants Dana E. and Kristi L. Ricker, and seeks to restore that mortgage to its original priority over intervening liens filed by the Internal Revenue Service.

Green Tree originally brought this action in Rockingham County Superior Court against the Rickers and the IRS. Acting on behalf of the IRS, the government removed the case to this court under 28 U.S.C. § 1444. That statute authorizes the removal of actions brought against the United States under 28 U.S.C. § 2410, which in turn authorizes suits to "quiet title" to real property in "which the United States has or claims a mortgage or other lien." The court of appeals has held that the "meaning and scope" of § 2410 encompasses an action, like this one, seeking to establish the priority of the plaintiff's mortgage over the government's tax lien, and thus creating federal subject-matter

jurisdiction here. *Progressive Consumers Fed. Credit Union v. United States,* 79 F.3d 1228, 1231–33 (1st Cir.1996).

Green Tree has moved for summary judgment, *see* Fed.R.Civ.P. 56, arguing that it is entitled to equitable reinstatement of the mortgage to its seniority over the tax liens as a matter of law because the discharge was recorded in error, and the government did not rely on the discharge in recording the liens. The government objects on a number of grounds, including that federal law establishing the priority of tax liens bars the equitable reinstatement of Green Tree's mortgage to a superior position and, in any event, Green Tree is not entitled to that relief under New Hampshire law (or at least has not shown that entitlement as a matter of law).

Following oral argument, Green Tree's motion for summary judgment is denied. As explained fully *infra,* while the court of appeals has rejected the argument that federal law bars the equitable reinstatement of a mortgage to a position of seniority over federal tax liens, *see, Progressive,* 79 F.3d at 1234–35, Green Tree has not conclusively shown that it is entitled to that relief under New Hampshire law which—though not as circumscribed as the government argues—"view[s] claims to circumvent the established order of priority, through resort to equity, with trepidation," *Hilco, Inc. v. Lenentine,* 142 N.H. 265, 267, 698 A.2d 1254 (1997).

## I. *Background*

The following facts are stated in an affidavit by Green Tree's "foreclosure manager," Ruth Hernandez, who purports to derive her knowledge of them either from Green Tree's regularly maintained business records or "from information transmitted by[ ] a person with knowledge of the facts set forth in said records." On October 9, 2001, the Rickers executed a mortgage on a parcel located in Farmington, New Hampshire, in favor of Conseco Finance Servicing Corp., which Green Tree says was its former name.[1] The mortgage, which secured a $118,000 debt evinced by a promissory note, was recorded against the parcel in the Strafford County Registry of Deeds the next day.

Green Tree says that the proceeds of the loan were used to satisfy an "existing" debt from the Rickers to Conseco, which arose from a mortgage loan extended earlier that same day. This was necessary, Green Tree explains, because the attorney who handled the closing on its behalf "inadvertently misplaced" the documents executed as part of the earlier loan. Green Tree also states that "[a]s part of any routine closing, the funds used to payoff the existing loan [from Conseco] were transmitted with a request for a discharge of lien."

As the government points out, Green Tree's foreclosure manager does not explain how she could have gleaned these facts from the company's business records, in light of the fact that the documents from the first loan were lost. Nevertheless, documents submitted by the government (including a settlement statement) tend to show that, on October 9, 2001, Conseco made a loan to the Rickers for $118,800, all of which was disbursed to Conseco, and that Conseco later sent a letter to itself enclosing the disbursement check and asking for a release of its mortgage.

1. The government says that, following the bankruptcy of Conseco's parent company, a third party purchased the parent's equity interest in Conseco and reorganized it as Green Tree. So it is unclear whether Conseco is simply Green Tree's "former name" as it claims, but the court will assume it is for purposes of this motion.

Green Tree further explains that, because the mortgage securing Conseco's first loan was never recorded, Conseco "inadvertently executed and recorded a satisfaction of the new mortgage" when, presumably, it was intending to record a satisfaction of its first mortgage instead. Curiously, though, this did not happen until May 24, 2002—despite the fact that the first Conseco loan was satisfied as soon as the second Conseco loan was made, on October 9, 2001 (more than 7 months earlier).[2] Furthermore, as the government points out, Green Tree explains the filing of the satisfaction differently in its complaint, which alleges that, after the loan was assigned from Conseco to Green Tree (which would not seem to have been necessary if, as Green Tree says, Conseco simply changed its name to Green Tree) Conseco "executed, in error, a satisfaction of mortgage, rather than an assignment of mortgage and caused [it] to be recorded" (quotation marks and capitalization omitted).

Green Tree further explains that the proceeds from the first loan were used to pay off two mortgages on the parcel that had been recorded in favor of the United States Department of Agriculture. But Green Tree has not provided any documents to that effect, including either the mortgages or their discharges.[3]

Beginning in 2000, the Secretary of the Treasury began making assessments, first against Dana Ricker, and then against both Rickers, for unpaid federal tax liabilities. After the Rickers failed to satisfy those liabilities despite demands that they do so, the Secretary began recording notices of federal tax liens against the property. The first of these notices was recorded in September 2004, but Green Tree says that it did not learn of them until September 2008, when it was notified of the government's claim that its liens were senior to Green Tree's mortgage. As of January 2011, the Rickers owe more than $169,000 between them in federal tax liabilities secured by the liens. They also owe more than $114,000 to Green Tree.

## II. *Applicable legal standard*

Summary judgment is appropriate where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). Under this rule, "[o]nce the moving party avers an absence of evidence to support the non-moving party's case, the non-moving party must offer 'definite, competent evidence to rebut the motion.'" *Meuser v. Fed. Express Corp.*, 564 F.3d 507, 515 (1st Cir.2009) (quoting

---

2. The court also notes that, in the versions of the note, mortgage, and discharge attached to the complaint, the note and the mortgage bear a "loan number" which is different from (and higher than) the loan number contained on the discharge. But the loan number (as well as other identifying information, such as the application number) has been blacked out on the versions of the note, mortgage, and discharge that Green Tree filed with Hernandez's affidavit, and also appears to have been redacted from the settlement statement, discharge request, and check submitted by the government.

3. Green Tree has submitted "payoff statements" from the USDA to the Rickers, but these simply show the total amount due on two loans as of August 22, 2001; they do not show that the loans were in fact repaid, whether out of the proceeds of Green Tree's loan to the Rickers or otherwise. For reasons that are not apparent to the court, Green Tree has not submitted any documents from the Strafford County Registry showing either the existence or the discharge of the USDA mortgages.

*Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991)).

Where, however, "the party moving for summary judgment bears the burden of proof on an issue, he cannot prevail unless the evidence that he provides on that issue is conclusive." *EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R.*, 279 F.3d 49, 55 (1st Cir.2002) (quotation marks omitted). This standard applies to Green Tree's motion for summary judgment, since it bears the burden of proving "the existence and applicability of equitable principles" that entitle it to relief. *Chase v. Ameriquest Mortg. Co.*, 155 N.H. 19, 26, 921 A.2d 369 (2007) (quotation formatting omitted).

### III. *Analysis*

■■■ "Federal tax liens do not automatically have priority over all other liens." *United States ex rel. IRS v. McDermott*, 507 U.S. 447, 450, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993). Instead, with some exceptions, "priority for purposes of federal law is governed by the common-law principle that the first lien in time is the first in right." *Id.* (quotation marks omitted). Thus, "for a state created lien to take priority over a later assessed federal lien, it must be 'choate' or 'perfected' so that the identity of the lienor, the property subject to the lien, and the amount of the lien are established prior to the filing of the subsequent federal lien." *Progressive*, 79 F.3d at 1234–35 (further internal quotation marks omitted). The perfection "of a state created lien is a matter of federal law and mirrors the standard applicable to liens asserted by the government," *id.* at 1235, i.e., among other things, perfection requires the filing of proper notice of the lien in the place designated by the law of the state where the property is situated, *see* 26 U.S.C. § 6323(a), (f).

Here, Conseco filed notice of its lien against the Rickers' property on October 10, 2001, when it recorded its mortgage in the place designated by New Hampshire law, i.e., the Strafford County Registry of Deeds. This occurred prior to the recording of any notice of the federal tax liens and, as a result, would have given the mortgage priority over the liens as "first in time." Green Tree's problem is that—also prior to the recording of the federal tax liens—Conseco recorded a discharge of its mortgage, which, at least under ordinary principles of priority, would make the liens senior to the mortgage. *See, e.g., Progressive*, 79 F.3d at 1230. To change this result, Green Tree seeks equitable relief in the form of "expunging the mistakenly recorded discharge[ ] and reinstating the mortgage, restoring its priority over the tax liens" (capitalization corrected).

The government objects to this relief on two principal grounds. First, the government maintains that federal law, which, again, controls the priority of its liens here, does not allow the reinstatement of a discharged mortgage to a position of seniority over subsequently filed tax liens, regardless of whether state law would. Second, the government argues that, in any event, Green Tree has not demonstrated its entitlement to the equitable reinstatement of the mortgage under New Hampshire law. The court disagrees with the government's first point but agrees with its second point. As a result, Green Tree's motion for summary judgment must be denied.

### A. Because New Hampshire law allows equitable reinstatement of a mortgage, federal law does not make that theory inapplicable here

As the government points out, a federal tax lien "shall not be valid against any . . .

holder of a security interest ... until notice thereof has been filed," 26 U.S.C. § 6323(a), and, in relevant part, "[a] security interest exists at any time if, at such time, ... the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation," *id.* § 6323(h)(1) (formatting altered). The government argues that, once the discharge was filed, Conseco's mortgage no longer amounted to a "security interest" under § 6323(h)(1) because it was no longer protected under New Hampshire law against subsequent judgment lienors. Thus, the government explains, at the time its liens were filed, the mortgage was no longer perfected under § 6323(a) (which, as just discussed, controls the perfection of both federal and state-law liens here, *see*, *Progressive*, 79 F.3d at 1235) and could therefore not have been "first in time."

 There is no question that a mortgage that has been discharged as of record is ordinarily not "protected" against a lien arising subsequent to the discharge. *See Anatole Caron, Inc. v. Manchester Fed. Sav. & Loan Ass'n*, 90 N.H. 560, 562, 10 A.2d 668 (1940); *Restatement (Third) of Property: Mortgages* § 7.3(a)(2) & cmt. *b*, at 476 (1997). But, as the New Hampshire Supreme Court has observed, "[c]ases in which mortgages have been revived and enforced after their discharge of record are fairly common in this jurisdiction," *Caron*, 90 N.H. at 564, 10 A.2d 668, on the theory that when "the discharge of [an] original mortgage was made through mistake, it may be set aside and the mortgage given its original priority as against the [post-discharge] attachment." *Hammond v. Barker*, 61 N.H. 53, 56 (1881); *see also In re Chase*, 388 B.R. 462, 468 (Bkrtcy. D.N.H.2008) ("There is no question that [New Hampshire] courts may equitably revive discharged mortgages."); *Int'l Trust Co. v. Davis & Farnum Mfg. Co.*, 70 N.H.

118, 119, 46 A. 1054 (1900). The simple fact that the discharge of Conseco's mortgage was recorded before the notices of the federal tax liens, then, does not necessarily mean that the mortgage was not "protected" against the liens as a matter of New Hampshire law so as to give them priority over the mortgage as a matter of federal law.

In arguing to the contrary, the government relies heavily on *Haas v. IRS (In re Haas)*, 31 F.3d 1081 (11th Cir.1994), a case in which, similar to this one, federal tax liens were recorded against a parcel after the allegedly erroneous discharge of a prior mortgage. The bankruptcy court, applying Alabama law, had restored the mortgage to its position of seniority over the liens, ruling that "absent reliance by a subsequent creditor, a mortgage that has been satisfied by mistake may be ... reinstated where such relief will not prejudice the rights of third or innocent persons," and that "the IRS had not detrimentally relied upon the erroneous release." *Id.* at 1083. The Eleventh Circuit Court of Appeals reversed. *Id.*

First, the court "concluded that Alabama law would protect a judgment creditor without notice from an erroneously released lien," so that "any tax liens filed by the IRS before the time the IRS had actual knowledge that [the mortgage] had been released by mistake would prevail over" it. *Id.* at 1086. Second, the court ruled that even those liens filed after the IRS learned of the erroneous nature of the discharge occupied a senior position to the mortgage, as a result of "the hypothetical judgment lien creditor rule." *Id.* at 1090. This test, which *Haas* adopted as "consonant with the purposes of [§ 6323] of promoting certainty and stability, thereby effectuating Congressional intent to designate the appropriate position for the IRS in the spectrum of priorities," places

the IRS "in the shoes of *any* subsequent judgment creditor, including the most favorable shoes." *Id.* at 1090 (footnote omitted). Putting the IRS in the shoes of "a class of judgment creditors without notice" of the erroneous nature of the discharge, then, gave all of its liens priority over the mortgage, even though, as an actual (as opposed to a hypothetical) matter, the IRS knew full well that the discharge was erroneous at the time some of those liens were imposed. *Id.*

The government argues that applying the "hypothetical judgment lien creditor test" here would result in the priority of its liens "[b]ecause a class of New Hampshire judgment lien creditors (those without actual notice of Green Tree's unrecorded mortgage) could have had priority over Green Tree's 'mortgage.'" But, as just discussed, New Hampshire law—unlike Alabama law, at least as interpreted by the *Haas* court—does allow for erroneously discharged mortgages to have priority over intervening judgment liens, even if the lienors were unaware that the discharge was erroneous.[4] Indeed, the New Hampshire doctrine of equitable reinstatement "has frequently been applied" against "subsequent incumbrancers," unless they "have done or omitted to do an[ ] act relying upon the recorded discharge." *Int'l Trust,* 70 N.H. at 118, 46 A. 1054. Under New Hampshire law, then, equitable reinstatement can be appropriate where the subsequent lienor knew the discharge was a mistake (on the theory that he could not have relied upon it), but it is

not limited to that circumstance. It follows that there is no "class of judgment creditors" under New Hampshire law whose interest would have necessarily been superior to Conseco's mortgage, and that the "hypothetical judgment lien creditor" test is therefore unavailing to the government here.

The government also relies on *Haas's* alternative holding: that "Treasury Regulations forbid application of a relation back principle to award an unperfected lien priority over the tax lien." 31 F.3d at 1091 (citing 26 C.F.R. § 301.6323(h)–1). Those regulations state, in relevant part, that:

a security interest is deemed to be protected against a subsequent judgment lien on—

(A) The date on which all actions required under local law to establish the priority of a security interest against a judgment lien have been taken, or

(B) If later, the date on which all required actions are deemed effective, under local law, to establish the priority of the security interest against a judgment lien.

For purposes of this subdivision, the dates described in (A) and (B) of this subdivision (i) shall be determined *without regard to any rule or principle of local law which permits the relation back of any action to a date earlier than the date on which the action is actually taken.*

26 C.F.R. § 301.6323(h)–1(a)(2)(i) (emphasis added). The *Haas* court reasoned that,

---

4. In suggesting otherwise, the government relies exclusively on cases dealing with unrecorded, or improperly recorded, mortgages and other encumbrances. *See, e.g., Amoskeag Bank v. Chagnon,* 133 N.H. 11, 16, 572 A.2d 1153 (1990) (holding that a judgment creditor, unlike a purchaser, does not take subject to a prior mortgage which has been improperly recorded). But Conseco's mortgage was

not "unrecorded"—it was recorded and then discharged as of record, and mistakenly so, according to Green Tree. None of the cases on which the government relies to support its "hypothetical judgment lien creditor" argument address that situation, and the government's argument does not address the New Hampshire cases, discussed herein, which do.

because "a court reinstating the mortgage would permit the perfection of the mortgage to relate back to the original date of recording," this regulation barred the use of equitable reinstatement against federal tax liens, even if state law would otherwise allow it. 31 F.3d at 1091.

■■ But equitable reinstatement does not treat a mistakenly discharged mortgage as if it had been perfected as of the date it was originally recorded, when it was in fact perfected on some later date. After all, a mortgage is perfected on the date it is originally recorded, even if it *is* subsequently discharged; equitable reinstatement merely treats that discharge as a nullity if it was the product of mistake and intervening lienholders have not relied on it. *See Caron*, 90 N.H. at 564, 10 A.2d 668; *Int'l Trust*, 70 N.H. at 119, 46 A. 1054. Equitable reinstatement, then, does not "perfect" an otherwise unperfected mortgage. Aside from *Haas*, this court is not aware of any authority for the proposition that the Treasury Regulation in question bars equitable reinstatement, or, for that matter, equating equitable reinstatement with relation back in any context.[5]

Moreover, this aspect of *Haas* was squarely rejected by our court of appeals in *Progressive*. There, a mortgage on property in Massachusetts was recorded before several federal tax liens, but was discharged when the mortgagee refinanced the loan and recorded a new mortgage,

resulting in "priority of the federal tax liens, because of their recording dates, over the new mortgage." 79 F.3d at 1230. The mortgagee, like Green Tree here, "sought a declaration that its mortgage had priority over [the] properly recorded federal tax liens." *Id.* In support of this relief, the mortgagee invoked what the court of appeals referred to as the Massachusetts law "doctrine of unjust enrichment," i.e., " 'where a mortgage has been discharged by mistake, equity will set the discharge aside and reinstate the mortgage to the position which the parties intended it to occupy, if the rights of the intervening lienholders have not been affected.' " *Id.* at 1236 (quoting *N. Easton Co-op. Bank v. MacLean*, 300 Mass. 285, 15 N.E.2d 241, 245 (1938)).[6] Because the Massachusetts cases did "not concern federal tax liens," however, the district court granted summary judgment to the government. *Id.* at 1237.

The court of appeals reversed, explaining that "cases involving the reinstatement of mortgages that have been inadvertently discharged to the advantage of unintended and unexpected beneficiaries are sufficiently analogous ... [w]hether or not federal tax liens are involved." *Id.* The court further observed that other "federal courts have held that the doctrine is applicable where the federal government is involved; and, in several instances, have restored state created liens to their intended posi-

---

5. As the Supreme Court has explained, "the doctrine of relation back ... by process of judicial reasoning merges the attachment lien in the judgment and relates the judgment lien back to the date of [the pre-judgment] attachment." *United States v. Sec. Trust & Sav. Bank of San Diego*, 340 U.S. 47, 50, 71 S.Ct. 111, 95 L.Ed. 53 (1950). This is the kind of "relation back" to which most courts have applied 26 C.F.R. § 301.6323(h)–1. *See, e.g., Smith Barney, Harris Upham & Co. v. Connolly*, 887 F.Supp. 337, 345 n. 20 (D.Mass.1994); *Assured Inv. & Loan, Inc. v. United States*, 732

F.Supp. 94, 96 (D.Kan.1990); *In re Jasper–O'Neil*, 149 N.H. 87, 89–90, 816 A.2d 989 (2003).

6. This is plainly the same theory of equitable relief recognized in New Hampshire. *See, e.g., Caron*, 90 N.H. at 564, 10 A.2d 668. The fact that the New Hampshire Supreme Court has not referred to the theory as "unjust enrichment" does not make *Progressive* inapplicable here, as the government seems to suggest.

tions without regard for the United States' potential loss of priority under federal law." *Id.* (citing *United States v. McCombs,* 30 F.3d 310, 333 (2d Cir.1994); *Dietrich Indus., Inc. v. United States,* 988 F.2d 568, 573 (5th Cir.1993); *and Han v. United States,* 944 F.2d 526, 530 n. 3 (9th Cir.1991)). *Progressive,* then, expressly holds that federal law allows the use of a state-law equitable doctrine to restore a mistakenly discharged mortgage to its position of priority over federal tax liens. That holding is binding on this court, whatever it may think of the decision to the contrary in *Haas.*

Despite *Progressive,* the government argues that federal law does not contemplate the relief sought by Green Tree because it does not amount to "subrogation" under 26 U.S.C. § 6323(i)(2). That section provides that "[w]here, under local law, one person is subrogated to the rights of another with respect to a lien or interest, such person shall be subrogated to such rights for purposes of any [federal tax lien]." This argument is a red herring, as *Progressive* makes clear.

There, emphasizing that § 6323(i)(2) "explicitly authorizes the application of local laws of subrogation and is silent as to the application of the doctrine of unjust enrichment," the government defended the district court's conclusion that "there is no basis upon which to presume the applicability of a common law doctrine," i.e., unjust enrichment, "not expressly provided for by the statute." 79 F.3d at 1235. But the court of appeals rejected that argument, explaining that "federal courts should presume applicability of state common law doctrines in determining the status of state created liens." *Id.* So, even if the doctrine Green Tree has invoked here does not qualify as "subrogation" under § 6323(i)(2), it still applies in deciding the relative priority of the discharged mortgage and the federal tax liens, as *Progressive* expressly holds.[7] Contrary to the government's assertion, then, federal law does not render the doctrine of equitable reinstatement inapplicable here.

### B. Green Tree has not conclusively shown it is entitled to equitable reinstatement under New Hampshire law

The government also argues that, even if federal law does not bar the equitable reinstatement of Green Tree's mortgage to a position of priority over the federal tax liens, Green Tree is not entitled to that relief under state law.[8] As already

---

**7.** The court therefore need not decide whether, as the government argues at length, Green Tree cannot invoke equitable subrogation because the funds from Conseco's erroneously discharged mortgage were used to satisfy the prior mortgage to Conseco, instead of a third party. The court notes that Green Tree states—in one sentence in its summary judgment brief—that "since [Conseco] satisfied two prior mortgages of record in favor of the USDA" when it extended the first mortgage loan, "equity commands that [its] mortgage have priority" over the subsequent tax liens in the amount of the prior indebtedness to the USDA "at the very least." But the court also need not decide at the moment whether that amounts to equitable subrogation under § 6323(i)(2) because Green Tree has not

shown by admissible evidence that Conseco's first loan was used to pay off the USDA mortgages. *See* note 3 and accompanying text, *supra.*

**8.** The government argues that Green Tree's claim for equitable reinstatement is moot because, even if this court enters a judgment granting it, "that interest will not be perfected until that judgment is recorded" and will therefore remain junior to the government's existing liens. This argument verges on the nonsensical. A judgment granting equitable reinstatement of an erroneously discharged mortgage to a prior position over subsequent liens would *always* be meaningless if the mortgage nevertheless remained junior to the liens in this way.

discussed at length, New Hampshire law recognizes that a "'mortgage released through mistake may be restored in equity and given its original priority as a lien.'" *Hilco*, 142 N.H. at 267, 698 A.2d 1254 (quoting *Caron*, 90 N.H. at 564, 10 A.2d 668). Nevertheless, the New Hampshire Supreme Court "view[s] claims to circumvent the established order of priority, through resort to equity, with trepidation," because that relief runs counter to the "essential purpose" of recording statutes in "ensuring notice to the public of property interests." *Id.* Whether to restore a mortgage that a plaintiff has discharged by mistake, then, "will depend upon the strength of the plaintiff['s] case for equitable intervention, and not upon any supposed weakness of the . . . equitable position" of the intervening lienholders. *Id.* at 267–68, 698 A.2d 1254.

▆ In moving for summary judgment, however, Green Tree focuses exclusively on the "supposed weakness" of the government's equitable position, emphasizing that it was not aware of the discharge when it recorded the tax liens and therefore could not have acted in reliance on it. As *Hilco* holds, however, the availability of equitable restoration "focuses entirely upon the equitable arguments in favor of the *plaintiff['s]* position"; because an intervening lienholder "stand[s] upon his or her legal rights to establish priority, the weakness of his or her equitable position is irrelevant." *Id.* at 268, 698 A.2d 1254. So Green Tree is not entitled to summary

judgment simply because the government did not rely upon the discharge when it filed its tax liens. Other than that misplaced argument, Green Tree does not offer any other reason why it should be entitled to equitable relief here.

That shortcoming aside, Green Tree has not established the very premise of its equitable restoration claim, i.e., that the discharge was in fact recorded by mistake. Mistake "is a proper ground upon which to relieve a party from the legal consequences of his own act[ ] only when its effect is to disappoint the intention of the doer by bringing about an unintended result," not "merely because it later appears to have been unwise." *Churchill v. Exeter Mfg. Co.*, 86 N.H. 415, 417–18, 170 A. 10 (1934). Green Tree has not conclusively shown that its discharge of the second mortgage was mistaken in the sense that, at the time, it was intending to accomplish some other objective.

Green Tree relies on Hernandez's statement that because the first "mortgage was never recorded, Conseco inadvertently executed and recorded a satisfaction of the new mortgage." But Hernandez does not say how she knows this. She claims that all of the facts set forth in her affidavit come from either "business records, which are kept and maintained in the ordinary course of business by" Green Tree, "or from information transmitted by[ ] a person with knowledge of the facts set forth in said records," but neither of these demon-

The authorities cited by the government establish merely that a judgment creating a lien is not effective against subsequent lienholders until it is recorded. But a judgment granting equitable reinstatement does not itself create a lien. It restores a lien previously created, but erroneously discharged of record before subsequent liens were imposed. The Bankruptcy Court's decision in *In re Chase*, on which the government heavily relies, holds only that a judgment granting equitable sub-

rogation "is not binding on *subsequent* attaching creditors" who perfect their interests before the judgment is recorded. 388 B.R. at 469 (emphasis added). It does not hold that, until it is recorded, the judgment is not binding on the very parties against whom equitable subrogation has been awarded, i.e., the *intervening* creditors. Again, if that were the law, the doctrines of equitable subrogation and reinstatement would be pointless.

strates the proper foundation for the statement at issue.

■ First, while "a corporate representative may testify and submit affidavits based on knowledge gained from a review of books and records," as this court has recognized, *Philbrick v. eNom*, 593 F.Supp.2d 352, 364 (D.N.H.2009) (quotation marks omitted), Green Tree does not say why its regularly maintained business records would contain an explanation of the reason a discharge was filed in a particular case, and that proposition is far from self-evident. Second, if Hernandez learned this instead from "a person with knowledge of" it (which her affidavit acknowledges as the basis for at least some of its statements), then her account of it is inadmissible hearsay, as the government points out. *See* Fed.R.Evid. 801. Either way, her statement as to why the discharge was filed is inadmissible on summary judgment. *See* Fed.R.Civ.P. 56(c)(4).

Furthermore, even if Hernandez's statement could be considered, it still would not conclusively establish that Conseco mistakenly discharged the second mortgage while intending to discharge the first. As the government notes, Green Tree offered a different explanation for the discharge in its complaint, alleging that Conseco meant to file an assignment of the mortgage, rather than a discharge. Furthermore, the discharge was not filed until more than seven months after the alleged substitution of the second mortgage for the first, calling into question Green Tree's account that the discharge was directed at the first mortgage. Green Tree has not explained any of these discrepancies, which leave a genuine issue as to whether the second mortgage was in fact discharged by mistake at all.

Finally, there is also a genuine issue as to Conseco's degree of fault in mistakenly

discharging the mortgage. The government argues that, because Conseco was negligent, it is not entitled to equitable restoration of the mortgage as a matter of law. While the court agrees that Conseco may have been negligent (at least based on the record as it stands) the court disagrees that any such negligence would automatically disqualify Green Tree from obtaining equitable restoration here.

The government relies on *Hilco*, which ruled that the Superior Court had erred in equitably restoring the plaintiffs' mortgage to its original position of priority over that of intervening lienholders because "it allowed the plaintiffs to be shielded by equity from the consequences of their agent's negligence in not discovering" the intervening lien. 142 N.H. at 268, 698 A.2d 1254 (citing 55 Am.Jur.2d *Mortgages* § [417] *and* 59 C.J.S. *Mortgages* § 282(c)(2) (1949)). The intervening lien there existed as of record when the plaintiffs' predecessor banks discharged their prior mortgages, and recorded new ones, as part of a refinancing, but was not discovered due to "the negligence of the bank's counsel." *Id.* at 266, 698 A.2d 1254. This put the lien "first in line, unless, for some adequate reason, equity does not follow the law in this instance." *Id.* at 267, 698 A.2d 1254 (quotation marks and bracketing omitted). The New Hampshire Supreme Court found no such reason. Explaining that, while "[i]gnorance and deceit are factors that in some circumstances . . . weigh[ ] the equities in favor of restoring a previously discharged mortgage," the court ruled that the plaintiffs could show neither, because they "had constructive notice" of the intervening lien by virtue of its proper recording. *Id.* at 268, 698 A.2d 1254 (citing *Caron*, 90 N.H. at 564, 10 A.2d 668).

Here, though, the federal tax liens had not yet been recorded when Conseco dis-

charged its mortgage, so it makes no sense to say that Conseco was on constructive notice of the liens, or negligent in failing to discover them, so as to bar equitable restoration of the mortgage here. This is not a case like *Hilco*, or *Caron*, where the mortgagee unquestionably intended to discharge its original mortgage in favor of a new one, but did not intend that the new mortgage take a junior position to intervening liens. Instead, Green Tree argues that Conseco never intended to discharge its mortgage at all.

In *Caron*, in fact, the New Hampshire Supreme Court specifically recognized this distinction. The court explained that, in its prior cases where "a new mortgage [was] substituted in ignorance of an intervening lien," the mortgagee had suffered from "ignorance or deceit" as to the existence of the intervening lien, but noted that "no comparable factors" were "present in the case at bar." 90 N.H. at 564, 10 A.2d 668 (quotation marks omitted). The court then separately discussed *International Trust*, supra, as "stand[ing] for the proposition that where the acts of the parties are not legally effective to accomplish the acts which they intended, equity may intervene to correct the mistake and produce the intended result when the rights of third parties will not be affected thereby." [9] *Id.* But the court noted that this theory did not apply there either, because there was "no indication that the parties intended their acts to have any other results other than those which would normally follow from them by operation of law." *Id.*

*Caron* strongly suggests, then, that to obtain equitable restoration of a mortgage discharged by mistake (as opposed to a mortgage discharged in the face of intervening liens), a mortgagee need show only that the mortgage was discharged by mistake (and that the intervening lienholders have not relied on the mistaken discharge, *see* note 9, *supra*). So far as this court can tell from its research, the New Hampshire Supreme Court has never held that the negligent character of the mistake bars equitable restoration or, for that matter, any other form of equitable relief premised on mistake.

Indeed, as one leading treatise observes, the proposition "that a mistake resulting from the complaining party's own negligence will never be relieved" in equity "is not sustained by the authorities." III John Norton Pomeroy, *Equity Jurisprudence* § 856b, at 339–40 (Spencer W. Symons, ed., 5th ed.1941). Instead, to bar equitable relief, "the neglect must amount to the violation of a positive legal duty. The highest possible care is not demanded." [10] *Id.* at 341. Courts in other juris-

---

9. While, at first blush, restoring the discharged mortgage to a position of priority over the intervening liens would seem to affect the rights of those lienholders, this is not the sort of "prejudice" (which, after all, would result from every instance of equitable restoration) that makes the relief unavailable. Instead, there is an absence of prejudice—and therefore a potential for equitable restoration—so long as the intervening lienholders did not rely on the mistaken discharge. *See Caron*, 90 N.H. at 564, 10 A.2d 668; *Int'l Trust*, 70 N.H. at 119, 46 A. 1054; *accord Progressive*, 79 F.3d at 1237. The government does not argue to the contrary.

10. As an example of conduct sufficiently negligent to bar equitable relief, Pomeroy cites an early Supreme Court case refusing to allow recovery to a bank against a depositor who had presented the bank with notes purporting to be its own but which had been forged (without its knowledge) by a third party who had subsequently sold them to the presenter (who also did not know the notes had been forged). *Bank of the United States v. Bank of Ga.*, 23 U.S. 333, 341, 10 Wheat. 333, 6 L.Ed. 334 (1825). The Court reasoned that the bank was "bound to know its own paper, ... and must be presumed to use all reasonable means ... to secure itself against forger-

dictions have applied essentially the same formulation in deciding claims for equitable restoration of mistakenly discharged mortgages, referring to it as "culpable negligence." *See, e.g., Home Fed. Sav. & Loan Ass'n v. Citizens Bank of Jonesboro,* 43 Ark.App. 99, 861 S.W.2d 321, 324 (Ark. Ct.App.1993); *Conn. Nat'l Bank v. Chapman,* 153 Conn. 393, 216 A.2d 814, 817 (1966); 59 C.J.S. *Mortgages* § 260, at 307 (1998).

 Again, there is no reason to believe New Hampshire would apply a different standard. Thus, any negligence by Conseco in recording the discharge will not bar its claim for equitable reinstatement unless it rises to the level of culpable negligence. "Whether or not a plaintiff will be barred of remedy in equity against the effect of mistake because of his negligence depends to a large extent upon the circumstances of the particular case." *Conn. Nat'l Bank,* 216 A.2d at 817 (citing *Pomeroy,* supra). As already discussed, though, the summary judgment record contains little if any admissible evidence as to the circumstances surrounding the recording of the discharge. Whether those circumstances amount to culpable negligence on the part of Conseco, then, is yet another genuine issue for trial.[11]

## IV. *Conclusion*

For the foregoing reasons, Green Tree's motion for summary judgment[12] is DENIED.

**SO ORDERED.**

## MEMORANDUM ORDER

The government has moved for reconsideration of this court's order denying the plaintiff's motion for summary judgment in this case, which seeks the equitable restoration of an allegedly mistakenly discharged mortgage to a position of priority over subsequent federal tax liens. *Green Tree Servicing, LLC v. United States,* 783 F.Supp.2d 243, 2011 DNH 056. In the alternative, the government seeks leave to file its own motion for summary judgment, even though the deadline for those motions set forth in the court's scheduling order passed on December 15, 2010 (and the government did not properly cross-move for summary judgment in response to the plaintiff's motion for summary judgment). Both forms of relief are denied.

Again, the court *denied* the plaintiff's motion for summary judgment. So the government is seeking reconsideration of an order denying relief to the adverse party, which is unusual, to say the least. The government's theory is that, not only should this court have denied the plaintiff's motion for summary judgment, it should also have granted summary judgment for the government—even though the government filed no summary judgment motion of its own, but merely stated, on the last page of its objection to the plaintiff's motion, that the court should enter summary judgment for the government. The court did not do so, for two reasons: (1) given its

---

ies.... Its own security, not less than that of the public, requires such precautions." *Id.* at 343.

**11.** The government argues, on the last page of its brief, that the court should not only deny Green Tree's motion for summary judgment, but enter summary judgment for the government. A party seeking summary judgment, however, must file a separate motion to that effect; it is not enough simply to request that relief in the objection to the other side's motion. *See* L.R. 7.1(a)(1) ("Objections to pending motions and affirmative motions for relief shall not be combined into a single filing."). So the government's request to enter summary judgment against Green Tree must be denied for that reason alone.

**12.** document no. 15.

rulings on the legal arguments the government made in opposing the plaintiff's motion, the government was not entitled to that relief as a substantive matter, and (2) the government was also not entitled to that relief as a procedural matter, because its request violated Local Rule 7.1(a)(1)'s command that "[o]bjections to pending motions and affirmative motions for relief shall not be combined into a single filing."

As the government acknowledges, a successful motion for reconsideration of an interlocutory order, such as the order denying the plaintiff's motion for summary judgment, must "demonstrate that the order was based on a manifest error of fact or law." L.R. 7.2(e). The government has come nowhere close to showing that either the substantive or the procedural aspect of the court's summary judgment ruling was a "manifest error."

The government argues principally that this court misapplied the decision by the court of appeals in *Progressive Consumers Federal Credit Union v. United States,* 79 F.3d 1228 (1st Cir.1996). As this court observed in its prior order, *Progressive* "expressly holds that federal law allows the use of a state-law equitable doctrine to restore a mistakenly discharged mortgage to its position of priority over federal tax liens." 783 F.Supp.2d at 252, 2011 WL 1236162 at *7, 2011 DNH 056, 17.

The government does not question (and, indeed, appears to agree with) this characterization of *Progressive's* holding. Instead, the government argues that the *Progressive* court "explicitly grounded its decision on [26 U.S.C.] § 6323(i)(2)," which recognizes the doctrine of equitable *subrogation* against federal tax liens, and therefore does not apply here, where the plaintiff is seeking equitable *restoration* against

federal tax liens. This is a blatant misreading of *Progressive,* which this court rejected in its prior order. 783 F.Supp.2d at 251–53, 2011 WL 1236162, 2011 DNH 056, 17–19. That much is clear from the *Progressive* court's own words:

> The government argues that because section 6323(i)(2) explicitly authorizes the application of local laws of subrogation and is silent as to the doctrine of unjust enrichment, the district court was correct in deeming the latter doctrine inapplicable to [the plaintiff's] claim. We disagree. While the court was correct in stating that Congress gave an "explicit directive with respect to determining the priority of federal tax liens," it was incorrect in holding that "there is no basis upon which to presume the applicability of a common law doctrine" not expressly provided for by the statute. To essentially translate a directive for a federal scheme of priority into a preemption of state law governing the nature and extent of state created liens was unwarranted. To the contrary, federal courts should presume applicability of state common law doctrines in determining the status of state created liens. Such determinations do not contravene federal law simply because they ultimately bear on the federal issue of who was first in time in determining priority.

79 F.3d at 1235–36.[1] So the government has it backwards. *Progressive* did not allow the equitable restoration of a mistakenly discharged mortgage to a position of priority over subsequent tax liens *because* of § 6323(i)(2), but *in spite of* it.

Indeed, the government's motion for reconsideration betrays the fact that its real problem is not with this court's reading of

---

1. As noted in the prior order, the court of appeals used the term "unjust enrichment" to refer to equitable restoration. 783 F.Supp.2d at 251 n. 6, 2011 WL 1236162 at *6 n. 6, 2011 DNH 056, 16 n. 6.

*Progressive,* but with *Progressive's* reading of federal tax lien law. The government argues that "[i]f [§ ]6323(i)(2) is not the basis for that court's decision"—which, as just explained, it plainly was not—then "there is no statutory basis for the court's decision," meaning that it was "based on federal common law." And if that was the case, the government continues, then the court of appeals "ignored the federal tax lien statute and instead adopted its own interpretation of the law" in "an instance of the First Circuit overreaching its authority."

As the passage just quoted makes clear, *Progressive's* holding was indeed based on common law because, as the court explained, "federal courts should presume applicability of state common law doctrines in determining the status of state created liens." 79 F.3d at 1235. This would not appear to be the sort of judicial "overreaching" the government tries to portray it as, *see, e.g., Samantar v. Yousuf,* —— U.S. ——, —— n. 13, 130 S.Ct. 2278, 2289 n. 13, 176 L.Ed.2d 1047 (2010) ("when a statute covers an issue previously governed by the common law, we interpret the statute with the presumption that Congress intended to retain the substance of the common law"), but, in any event, this court's view of the soundness of *Progressive* is beside the point. This court is bound to follow controlling circuit precedent, regardless of what it—or, for that matter, the government—thinks of it, and it certainly cannot be a "manifest error of law" to do so.

The government's remaining arguments in its motion for reconsideration also either explicitly or implicitly invite this court to disregard *Progressive* and likewise come nowhere near the standard for relief on a motion for reconsideration:

1. *The court misapplied the hypothetical judgment lien creditor test.* As the court observed, this test "places the IRS 'in the shoes of *any* subsequent judgment creditor, including the most favorable shoes'" in determining the priority of its liens as a matter of the applicable state law. 783 F.Supp.2d at 250, 2011 WL 1236162, 2011 DNH 056, 12 (quoting *Haas v. IRS (In re Haas),* 31 F.3d 1081, 1090 (11th Cir.1994) (footnote omitted in prior quotation)). In opposing the plaintiff's motion for summary judgment, the government had argued that applying this test here "would result in the priority of its liens '[b]ecause a class of New Hampshire judgment lien creditors (those without actual notice of [the plaintiff's] unrecorded mortgage) could have priority over [the plaintiff's] 'mortgage.'"[2] *Id.* at 12, at 250, at *12 (quoting Gov't's Opp'n to Pl.'s Mt. for Summ. J. at 10). But the court rejected the premise of this argument, ruling that "there is no 'class of judgment creditors' under New Hampshire law whose interest would necessarily have been superior to [the plaintiff's] mortgage." *Id.* at 13, at 250, at *12. As the court explained, New Hampshire law "does allow for erroneously discharged mortgages to have priority over intervening judgment liens, even if the lienors were unaware that the discharge was erroneous." *Id.* (footnote omitted).

In moving for reconsideration, the government argues that "a state law judgment creditor that relied upon a recorded discharge could have priority" over the discharged mortgage under New Hampshire law, even if the discharge was erroneous.

---

**2.** The mortgage was actually given to the plaintiff's alleged predecessor-in-interest, Conseco Financing Servicing Corp., rather than the plaintiff itself, but because that distinction is unimportant for present purposes the court will refer to them here interchangably as "the plaintiff."

But, as just stated, this court ruled precisely to the contrary in the summary judgment order, and the government does not explain how that ruling was an error, let alone a "manifest" one. Indeed, the government does not cite any New Hampshire law at all.[3]

2. *The plaintiff has no security interest protected under federal law because it has not yet demonstrated its right to equitable restoration.* The government maintains that this requirement proceeds from "certain aspects of the Treasury Regulations" which this court "appears to have overlooked" in ruling that "[t]he simple fact that the discharge of [the plaintiff's] mortgage was recorded before notices of the federal tax liens . . . does not necessarily mean that the mortgage was not 'protected' against the liens as a matter of federal law." 2011 DNH 56, 11. To the contrary, the government now argues, Treasury Regulations, namely 26 C.F.R. § 301.6323(h)-(1)(a)(2), demand that to be protected against a federal tax lien a lienor take "all actions required under local law to be protected against a state law-judgment lien," and that the plaintiff has not done that, because those actions include

proving its right to equitable restoration under New Hampshire law.

■ First, though, the government did not make this argument in its opposition to the plaintiff's summary judgment motion, and a motion for reconsideration is not an appropriate vehicle for raising arguments that could have been made previously but were not. *See Platten v. HG Bermuda Exempted Ltd.,* 437 F.3d 118, 139 (1st Cir.2006). Second, the government's argument would categorically disallow the use of state-law equitable doctrines to restore an erroneously discharged mortgage to a position of priority over intervening federal tax liens[4]—a result which, whatever else may be said of it, is directly contrary to the holding of *Progressive,* as just discussed.

3. *The equitable restoration of the plaintiff's mortgage amounts to "relation back" which cannot alter the record priority of the federal tax liens.* The court's order denying the plaintiff's motion for summary judgment rejected this argument, at least as the government had formulated it in its summary judgment ob-

---

3. Instead, the government seems to suggest that the hypothetical judgment lien creditor test automatically prevents the equitable restoration of an erroneously discharged mortgage to a position of priority over intervening tax liens, since the equitable nature of that relief means it will not be available in every case of an erroneous discharge. Whatever else can be said of that argument, it cannot be reconciled with the decision by the court of appeals in *Progressive.*

4. In this sense, the government's argument here suffers from the same fatal logical flaw as one of the arguments it did make in its summary judgment objection: that the plaintiff's "claim for equitable reinstatement is moot because, even if this court enters a judgment granting it, 'that interest will not be perfected until that judgment is recorded' and will therefore remain junior to the govern-

ment's existing liens." 783 F.Supp.2d at 252 n. 8, 2011 WL 1236162 at *14, 2011 DNH 056, 19 n. 8. The court observed that "[a] judgment granting equitable reinstatement of an erroneously discharged mortgage to a prior position over subsequent liens would *always* be meaningless if the mortgage nevertheless remained junior to the liens in this way." *Id.* Likewise, a mortgagor trying to obtain equitable reinstatement of its mistakenly discharged mortgage to a position of priority over subsequent federal tax liens— which requires proving its entitlement to that relief—could *never* succeed if the mortgagor had to prove, in essence, that it had proven its entitlement to that relief *before* the federal tax liens had been recorded. Indeed, that would seem to be a metaphysical impossibility. So this argument—like the government's prior mootness argument—"verges on the nonsensical." *Id.*

jection. As previously articulated, the government's argument was based on *Haas's* alternative holding that "Treasury Regulations forbid application of a relation back principle to award an unperfected lien priority over the tax lien." 31 F.3d at 1091 (citing 26 C.F.R. § 301.6323(h)–1). In declining to adopt that holding, this court reasoned that (1) the *Haas* court had mistakenly treated equitable reinstatement as a form of relation back, and (2) in any event, "this aspect of *Haas* was squarely rejected by our court of appeals in *Progressive.*" 783 F.Supp.2d at 251–52, 2011 WL 1236162, 2011 DNH 056, 14–17.

The government's motion for reconsideration does not address this second conclusion, apart from a single sentence that *Progressive* "never analyzes" the relevant Treasury Regulations.[5] But that criticism

of *Progressive* does not change the fact that its holding—again, that federal law allows the use of a state-law equitable doctrine to restore a mistakenly discharged mortgage to a prior position over federal tax liens—simply cannot be reconciled with *Haas's* holding that doing so amounts to an impermissible use of "relation back" under the Treasury Regulations. So, as this court explained in its prior order, it must follow *Progressive,* "whatever it may think of the decision to the contrary in *Haas.*" *Id.* at 17, at 252, at *7. It bears repeating that following controlling authority is not a manifest error of law.

4. *Progressive is "distinguishable."* The government explains that in *Progressive,* the plaintiff's mortgage "was recorded and in effect" at the time the notices of tax liens were filed, but was later "re-

---

**5.** Instead, the government attacks, as "not supported by the cases cited" in the summary judgment order, this court's conclusion that the New Hampshire doctrine of equitable reinstatement does not amount to relation back, but "treats [a] discharge as a nullity if it was the product of mistake and intervening lienholders have not relied on it." 783 F.Supp.2d at 251, 2011 WL 1236162, 2011 DNH 056, 15. That attack is irrelevant, in light of *Progressive,* and it is also ill-founded. First, the government still fails to cite any New Hampshire case—or, for that matter, any case at all besides *Haas*—that equates equitable restoration with relation back. *See id.* at 15, at 251, 2011 WL 1236162. Second, as specifically discussed in the summary judgment order, *id.* at 25, at 255, 2011 WL 1236162, the New Hampshire Supreme Court has explained, in discussing equitable restoration, that "where the acts of the parties are not legally effective to accomplish the acts which they intended, equity may intervene to correct the mistake and produce the intended result when the rights of third parties will not be affected thereby." *Anatole Caron, Inc. v. Manchester Fed. Sav. & Loan,* 90 N.H. 560, 564, 10 A.2d 668 (1940) (discussing *Int'l Trust Co. v. Davis & Farnum Mfg. Co.,* 70 N.H. 118, 46 A. 1054 (1899)). The government does not

explain how that differs from treating the "discharge as a nullity if it was the product of mistake and intervening lienholders have not relied on it," as this court described equitable restoration.

The government also argues that, even if New Hampshire law operates this way (i.e., the way the New Hampshire Supreme Court has said it does), then "that would constitute a 'legal fiction' that could not take the matter out of the federal principle that relation back cannot apply to federal tax liens." But that argument is unavailing here because (1) the government failed to make it in its summary judgment objection, *see Platten,* 437 F.3d at 139, and (2) the sole case cited in support, *Drye v. United States,* 528 U.S. 49, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999), does not stand for the proposition that a state-law "legal fiction"—a term the decision uses once and does not define—has no effect on the priority of federal tax liens, as the government seems to suggest. *Id.* at 52, 120 S.Ct. 474 (holding that a taxpayer's "interest as an heir to his mother's estate constituted 'property' or a 'right to property' to which [ ] federal tax liens attached ... despite [his] exercise of the prerogative state law accorded him to disclaim the interest retroactively") (bracketing by the Court omitted).

leased in ignorance of the tax liens" when the plaintiff refinanced the mortgage and recorded a new one. Here, in contrast the plaintiff had already discharged its mortgage as of record by the time the notices of tax liens were filed. Thus, the government maintains, while the result in *Progressive* served "to restore the parties to their original priorities," i.e., prior to the mistaken discharge, "granting [the plaintiff] priority here would not restore the parties to the status quo, but instead place [it] into a position that it never rightfully occupied." Indeed, the government argues, the plaintiff here is in the same situation as the holder "of an unrecorded mortgage that was executed, but not recorded, prior to a subsequent lien being filed."

In the summary judgment order, however, this court rejected the government's attempt to liken a mistakenly discharged mortgage to an unrecorded one as inconsistent with New Hampshire law, 2011 DNH 056, 13 n. 4, 783 F.Supp.2d at 250 n. 4, 2011 WL 1236162 at *5, and the government does not even argue that conclusion was wrong, let alone manifestly so. And the argument the government *does* make misses the point. Yet again, this court relied on *Progressive* for the proposition that "federal law does not render the doctrine of equitable reinstatement inapplicable here." *Id.* at 18–19, at 252, 2011 WL 1236162. It did not rely on *Progressive* to find the doctrine *applicable* here, which, as the government seems to acknowledge, is a question of New Hampshire law, not the Massachusetts law discussed in *Progressive.* This court did reject the government's argument that the plaintiff was not entitled to equitable reinstatement as a matter of New Hampshire law, but that ruling relied on state law, not on *Progressive, id.* at 23–28, and, again, the government does not even claim that ruling was wrong. So the government's argument

that *Progressive* is "distinguishable" because there, unlike here, the mistaken discharge followed rather than preceded the federal tax liens, fails to show any error, manifest or otherwise, in the summary judgment order.

Finally, the government challenges the court's procedural ruling that it could not consider the government's request for summary judgment in its favor, contained in a sentence or two of its objection, because of L.R. 7.1(a)(1), quoted at the outset. The government emphasizes that a court has the power to enter summary judgment *sua sponte, see, e.g., Sanchez v. Triple–S Mgmt. Corp.,* 492 F.3d 1, 7 (1st Cir.2007), or against the party who moves for summary judgment, *see* Fed.R.Civ.P. 56(f)(1). Of course, while there is no doubt that a court *can* do those things, it does not follow that a court errs—let alone manifestly—by not doing them, even if, as the government says is the case here, the non-moving party is entitled to summary judgment so that withholding that relief "would serve no practical purpose."

In any event, the government is not entitled to summary judgment here, because, as this court previously ruled, "the court of appeals has rejected the argument that federal law bars the equitable reinstatement of a mortgage to a position of seniority over federal tax liens." 783 F.Supp.2d at 246, 2011 WL 1236162, 2011 DNH 056, 2 (citing *Progressive,* 79 F.3d at 1234–35). The government clearly disagrees with the court of appeals and, in fairness, at least one other federal circuit court has seen the issue differently. The proper means for voicing that disagreement, however, is not by asking this court to reconsider its decision to follow binding circuit precedent, but by asking the *court of appeals* to reconsider that precedent through the appropriate mechanisms.

Until those mechanisms become available, however, the plaintiff is entitled to pursue its claim in this court. The government's motion for reconsideration or, in the alternative, for leave to file a summary judgment motion (document no. 19) is DENIED. The case is scheduled for a final pretrial conference on **October 11, 2011 at 10:30 a.m.**, the bench trial is scheduled for **October 17, 2011 at 9:30 a.m.** and the parties' final pretrial filings are due accordingly.

**SO ORDERED.**